| SARAH H. BOWIC | |
|---|---|
| vs. | JULY TERM, 1850. |
| PETER A. BOWIC ET AL. | |

[DIVORCE A MENSA—CRUELTY OF TREATMENT—CONDONATION.]

MERE petulance and rudeness, and sallies of passion, are not sufficient to constitute "cruelty of treatment," within the meaning of the Act of 1841, ch. 262; there must be a series of acts of personal violence, or danger of life, limb, or health, to authorize a divorce *a mensa*.

Where a husband inflicts blows and other personal violence upon his wife, and by such violence and threats places her in fear for her life, and obliges her to fly from him to avoid serious injury, such conduct constitutes "cruelty of treatment;" and the fact that it was the result of intemperance on the part of the husband in no way diminishes the title of the wife to relief.

There is a difference between condonation of the husband, and of the wife. A much less stringent rule applies to the latter than to the former, because the wife may find it difficult to quit the husband's house, or withdraw from his bed, and she must submit to necessity; circumstances which do not apply to the husband.

Yet, after the parties have become reconciled, the Courts are averse to reviving or listening to old grounds of complaint, which had better be forgotten, as well as forgiven.

A separation occurred in 1847, in consequence of the cruel treatment of the husband. The parties afterwards became reconciled, and lived together. The property upon which the parties lived was settled upon the wife and her children, by the will of her father, in such manner that the husband could not deprive the wife entirely of the beneficial enjoyment of it. The parties were married in 1824, and had raised a large family; and there was no proof of cruel treatment since 1847. HELD, that, under these circumstances, it would not be proper to decree a separation.

The marriage relation is not to be dissolved upon slight grounds; and parties will not be released from the duties and responsibilities it imposes, merely because there may be some want of congeniality in their tempers and dispositions. Public policy and morality alike condemn partial dissolutions of the matrimonial union. *( e͏͏͏  l   )*

---

[The bill in this case was filed on the 10th of January, 1850, and alleges that the complainant was married to the defendant in 1824, since which time she has discharged the duties and obligations imposed upon her by her marriage-vows faithfully, and to the utmost of her ability. That her husband, the said Peter Bowic, has, within twelve or fifteen years past, under the influence of intemperance, been so cruel in his conduct towards complainant as to render her existence almost intolerable, and during that period has frequently, by threats and blows, and other personal violence, put complainant in fear for her life; that she has sometimes been obliged to fly from him to avoid serious injury, and at others to invoke the protection of her children and servants to shield her from his assaults. That, in September, 1847, she was compelled, by

his cruel and violent conduct, to require surety of him to keep the peace towards her, and, by his recent misconduct and ill-treatment of the same nature, she has been obliged to separate from him. The bill then charges that John L. Trundle, complainant's father, being anxious to provide for her support and that of her children, executed his will in 1836, in which he devised as follows: "I give and devise unto three of my sons, namely, Horatio, Hezekiah W., and David H. Trundle, the farm now in the occupancy of Peter A. Bowic, together with all the personal property belonging to me now in the possession of the said Peter A. Bowic, to them and their heirs in trust, for the use and benefit of my daughter, Sarah H. Bowic, wife of the said Peter A. Bowic, her heirs and assigns for ever; and the aforesaid trustees are hereby authorized to suffer the aforesaid property to remain in the hands of the said Peter A. Bowic as heretofore, for the benefit of himself and family, but in no case to be allowed the privilege to dispose of any part thereof without their consent or approbation; and if my daughter, Sarah H. Bowic, be left a widow, then and in that case she is to have the entire control of all the aforesaid property, without the let or hindrance of any person, whatsoever." The prayer of the bill is for a divorce *a mensa et thoro*, and for a decree directing the said trustees to hold said property for the use of complainant and her children, and prohibiting the said Peter from interfering therewith, or claiming or demanding any part of the proceeds or profits thereof, and that the trustees be enjoined from paying over any part of the same to him. The husband, and Horatio and Hezekiah W. Trundle, the surviving trustees, were made defendants.

The answer of the defendant, Bowic, denies the charges of cruelty of treatment preferred against him by his wife, and recriminates by charging intemperance and vicious conduct to the complainant. He then proceeds to set up in himself an equitable title to the property devised by the will of John L. Trundle, and denies the construction placed upon the will by

the wife. There being no decision upon this title, it is not necessary to state it.

The answer of the trustees admits the allegations of the bill, and submits to such decree in the premises as may be right.

A commission was then issued, and proof taken, fully sustaining the allegations of the bill as to the cruel treatment by the defendant of his wife, prior to the year 1847, at which time, and in consequence of such cruel treatment, they were separated, but afterwards, becoming reconciled, they lived together again. Since that time there is no proof sustaining the charges in the bill. The cause was submitted upon bill, answer, and proofs, and argued by counsel for the respective parties. The Chancellor dismissed the bill, and, accompanying his decree of dismissal, delivered the following opinion :] ·

THE CHANCELLOR :

This is an application founded on the third section of the Act of 1841, ch. 262, which authorizes the Court to separate the parties from bed and board, for " cruelty of treatment ;" and, upon a careful examination of the evidence, I am of opinion that the conduct of the husband prior to the first separation in 1847 would have entitled the complainant to relief to that extent. The remarks which fell from Mr. Chancellor Kent, in reference to the meaning of those terms as employed in the New York statute, show, I think, that the treatment which the complainant received at the hands of her husband, prior to 1847, amounted to that species of cruelty which entitled the wife to the interposition of the Court. He said, in *Barrere* vs. *Barrere, 4 Johns. Ch. Rep.*, 189, that " mere petulance and rudeness, and sallies of passion, may not be sufficient ;" there must " be a series of acts of personal violence, or danger of life, limb, or health," to justify the Court in separating the parties. The proof relating to the conduct of the husband in this case, prior to 1847, establishes the charge of personal violence in repeated instances ; and though it may have been, and probably was, the result of the too fre-

quent use of intoxicating drink, that does not in any way diminish the title of the wife to the aid of this Court.

But it appears that, after the separation in 1847, the parties lived together, and I do not find in the proof that, between their reunion and the second separation in 1849, the defendant's behavior towards his wife was such as to bring it within the terms of the Act of Assembly, as those terms have been construed by the Courts, that is, that he has been guilty of acts of personal violence towards her, or exposed her to danger of life, limb, or health.

There can be no doubt, and for reasons which are obvious, that the forgiveness of the wife of injuries inflicted upon her by her husband is not pressed with the same rigor against her as would the forgiveness of the husband of the misconduct of the wife be pressed against him. The difference between condonation on the part of the husband and the wife, and the reasons for the difference, are stated in *Shelford on Marriage and Divorce*, 454, *et seq.;* and the authorities cited show that a much less stringent rule is applied to the wife than to the husband. But still, after the parties have become reconciled, the Courts are averse to reviving or listening to old grounds of complaint, which it were better should be forgotten, as well as forgiven.

In this view of the case, I am not much inclined to give weight to the evidence which speaks of the conduct of the husband prior to the first separation in 1847, and certainly it seems to me there is no ground to pronounce a sentence of separation between these parties for anything which has occurred since then. There is, moreover, a circumstance in this case worth considering, when the question is, with what degree of indulgence should the complainant's reconciliation with her husband after 1847 be regarded. Condonation, say the books, with respect to a woman, is held not to bear so strictly, "because it is not improper she should for a time show a patient forbearance;" "she may find a difficulty in quitting his house or withdrawing from his bed;" "she must submit to necessity;"—reasons which do not apply to the husband.

She may have no means of support except under his roof; "and under such circumstances it would," says *Shelford*, "be hard to term submission mere hypocrisy." In this case, however, it appears that this stern necessity, controlling the will of the wife, did not exist. The property upon which she and her husband lived was settled upon her by the will of her father; and although the husband may have certain rights in it, the existence and extent of which it is not at this time thought necessary to determine, it is supposed to be quite clear he has no authority to deprive her entirely of the beneficial enjoyment of it. Whatever may be the character of the estate created by the will of the complainant's father, it would seem impossible to doubt, in view of the manifest intention of the testator to provide his daughter and her children a support from its products, that a Court of Equity would interfere for their protection, if necessary, against the wrongful acts of the husband.

Upon a careful consideration, then, of all the circumstances of this case, I cannot bring myself to think it would be proper to decree the separation of these parties. As was said in *Coles* vs. *Coles*, 2 *Maryland Ch. Decisions*, 351, "The marriage-relation is not to be dissolved upon slight grounds; nor will parties be relieved from the duties and responsibilities it imposes, merely because there may be some want of congeniality in their tempers and dispositions." "Public policy and morality alike condemn these partial dissolutions of the matrimonial union."

This is not the ordinary case of a bill for a divorce and alimony. It asks not only for a divorce, but that the husband shall be excluded entirely from all benefit of the property provided by the father for the support of himself and his children. He has no other property, or means of subsistence, as may be fairly inferred from the record; and if the object of this bill be gratified, for aught that appears, he will in his old age be thrown upon the world in a condition of utter destitution. This is a result which the Court would be reluctant to occasion without a strong necessity; and when it is remembered that

these parties have lived together, with short intervals, since the year 1824, and have reared a family of children—and when it is likewise remembered that the property in question has been managed judiciously by him, and there is no charge that the profits resulting from it have not been applied to the support of his wife and children—the reasons which would induce the Court (assuming the power to exist) to take from him the whole benefit of it, and throw him out upon the world, it may be to beg or to starve, must be of controlling force. The habits of the husband have, no doubt, been bad, and his conduct reprehensible in the highest degree; but there certainly is evidence in the cause, drawn from witnesses whose inclinations would naturally have induced them to throw a veil over the painful subject, which establishes to some extent the recriminating charge in the answer, that the fault is not all on one side. I cannot entirely close my eyes against this proof; for, though it may not extenuate the conduct of the husband, it surely furnishes some defence against the complaint of the wife.

I shall, therefore, under all the circumstances of the case, dismiss this bill, but without giving costs to either party.

RICHARD J. BOWIE, for the Complainant.
JOHN BREWER, and CORNELIUS M'LEAN, for Defendants.