NEWMEYER *v.* NEWMEYER

[No. 201, September Term, 1957.]

(Two Appeals In One Record)

432

*Decided April 28, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and MACGILL, Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Paul Berman* and *J. Wilmer Cronin,* with whom were *Sigmund Levin, Melvin J. Sykes* and *Theodore B. Berman* on the brief, for appellant.

*A. Freeborn Brown* and *Samuel D. Hill,* with whom were *T. Carroll Brown, George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

These are cross-appeals from a decree granting the wife a divorce for the adultery of the husband, giving her custody of the five year old daughter, awarding her $100.00 a week as alimony and support for the child, dividing the personal property, and awarding a fee to counsel for the wife.

The husband did not below, and does not here, contest the divorce or the custody of the child. He says the alimony and support award of $100.00 a week and the counsel fee of $2,250.00 for services below and in this appeal are disproportionate to his means and grossly excessive. The wife seeks here, as she did below, $150.00 a week for her and the child, and defends the counsel fee given her lawyer. Three items of personal property are in dispute. The chancellor awarded the wife the marital "king-size" bed, a half interest in four debentures of Fidelity Credit Company, and a station wagon the husband had given her for Christmas free and clear of the unpaid balance of the purchase price still due. The husband contests, and the wife supports, the propriety of the action of the chancellor as to these items.

When the 266 pages of the record extract are brought into focus they reveal this picture. The couple married in 1947 and for some five years lived in an apartment in New Jersey where the husband's job was finding outlets for vending machines. In 1952 a daughter was born and they moved back to Harford County. Both his mother and father, who are separated, are well to do, and after the birth of the child the mother gave him a job in her ladies' clothing store in Aberdeen, paying him approximately $15,000 a year. This employment terminated in 1956. The wife says that this was for the purposes of the litigation so that his income would not justify a substantial award of alimony. The husband says it was because of his bad back, and offered some medical support for this contention. The husband's counsel at the argument said that it was because the ladies of Aberdeen would not patronize a mercantile establishment whose manager was an admitted adulterer. With the help of his father and mother, the husband has acquired considerable personal and real property, most, if not all, since the birth of his daughter

in 1952. He is of a speculative bent, and his estate, which is mortgaged to the hilt, produces a high rate of return. The standard of living of the couple rose after they returned to Maryland, and at the time of the separation, which occurred when the wife discovered the husband's adultery in July of 1956, was quite high. Most of the comforts and luxuries were paid for with borrowed money.

The parties differ sharply as to both the income and net worth of the husband. The wife claims each to be several times that admitted by the husband. The chancellor made no finding of fact as to either income or net worth and the award of $100.00 a week for support of the wife and child approximately split the difference between the $60.00 the husband had agreed to pay and the $150.00 the wife wanted. No good purpose would be served by our analyzing in detail the husband's income and net worth. It is sufficient to say that from his investment assets he has a gross income of some $9,200 a year and pays approximately $3,200 a year in interest. In estimating his income for the consideration of alimony and support, there must be added to the $6,000 that remains whatever he earns or has a reasonable expectation of earning. He says this is now only $2,500 a year. We find nothing in the record to support a finding of present total income, so estimated, of more than $12,000 a year. His net worth is admitted by him to be approximately $59,000, and is finally estimated by the wife—a considerable reduction from her original estimate—to be $80,000 or $85,000.

The wife has an income of $200.00 a year and capital assets of some $10,000, and the child, by gifts, has acquired an estate of some $9,000.

Bearing in mind the role this Court plays in reviewing the award of alimony by the chancellor, as restated in *Donigan v. Donigan,* 208 Md. 511, 521, and the factors to be considered—the husband's wealth and earning capacity, the station in life of the parties, their physical condition and ability to work, the length of time they have lived together, the circumstances leading up to the divorce and the fault that destroyed the home, *Waters v. Waters,* 191 Md. 436, 440; *Donigan v. Donigan, supra*—we think that no more than

$80.00 a week is justified. If the husband is reemployed by his mother or if his income increases for any other reason, the matter of increasing the support for the wife and child can then be taken up.

The setting of a fee for the wife's lawyer involves difficulties comparable to those of setting a proper amount of alimony. The wife says that it was necessary for her counsel to do extensive work in ascertaining her husband's resources. The husband says that all the information was tendered to the wife so that most of the work was unnecessary. The case took three days to try. Our consideration of the husband's financial resources and the difficulties and time involved in the preparation and the trial of the case, compels the conclusion that the award below was larger than it should have been, and that a fee of $1,500 for services below and in this Court is adequate.

The husband wants the marital bed because it was designed and built especially to accommodate his large size and the mattress was custom made to support his ailing back. The wife's desire for the bed would seem to be entirely sentimental. The chancellor awarded the bed to her because the store from which it was bought made out the invoice in her name, she having given the order. The husband produced cancelled checks showing that the entire purchase price had been paid by him. We think he proved that the bed was his, and that it should be given to him.

The four Fidelity Credit Company debentures, with a face value of $500 each, should be divided, one going to the wife and three to the husband, since she contributed $500 of the purchase price and he contributed $1,500. *Lopez v. Lopez,* 206 Md. 509, 518; *Jones, Admx. v. Hamilton, Admx.,* 211 Md. 371.

The Ford station wagon which the hubsand presented to the wife early on Christmas morning wrapped in red cellophane and a red bow admittedly was a gift to her. It was titled in her name. The husband says the gift was only of the equity in the car and the wife says that it was an outright gift, free and clear. The car was paid for with money borrowed from a bank in Aberdeen on a note signed by both

the husband and the wife. We think that in addition to the equity in the car, the wife received a property interest or right equal. to the amount of the money borrowed. The transaction was in two parts—a perfected gift of the equity in the car and a promise by the husband that he would make a gift of the balance due by paying the bank. The acceptance of one gift by a donee would not of itself constitute sufficient reason for enforcing a donor's promise to make an additional gift. 1 *Corbin, Contracts,* Sec. 205 at 674; *Broaddus v. First National Bank,* 161 Md. 116. But if the promisor should reasonably have expected that his promise would induce substantial action on the part of the promisee, and it does induce action that would be costly to the promisee if the promise were not enforced, there has been such a change of position in reliance on the promise as to make it enforceable and, so, a property right in the promisee. *Restatement, Contracts,* 90; 1 *Corbin, Contracts,* Secs. 205, 206. Here, in reliance on the hubsand's promise to fully pay for the car, the wife signed the promissory .note making her severally liable for the amount borrowed. If the otherwise gratuitous promisee incurs liability as a result of the promise to make the gift, this is enough to make the promise enforceable, as is expressly recognized in *Broaddus v. First National Bank, supra.* The fact that circumstances have changed since the promise to make the gift because the parties are no longer husband and wife, would not change the result. *Restatement, Restitution,* Sec. 58. On the facts we think her right to have the bank receive from the husband the balance due is a property right which the chancellor can award her under Code, 1957, Art. 16, Sec. 29.

There is an unwritten rule or practice in Harford County that alimony *pendente lite* is awarded for no more than ten weeks. Following this rule, the chancellor, as part of the final decree, awarded alimony pendente lite at $100.00 a week for ten weeks, although the case was not tried until a year after the separation. During this period the husband paid $60.00 a week pursuant to an agreement that payment was without prejudice and was to be credited against the alimony finally allowed. Although we have concluded that the perma-

nent alimony should be $80.00 a week, we are not disposed, under the circumstances, to disturb the award of ten weeks' temporary alimony at the rate of $100.00 a week.

> *Decree reversed and case remanded for passage of a decree not inconsistent with the views herein expressed, costs to be paid by S. Myron Newmeyer.*