## SCHUMAN *v.* SCHUMAN

[No. 433, September Term, 1967.]

*Decided January 10, 1969.*

14

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Stanley B. Frosh* for appellant.

No brief filed on behalf of appellee.

SMITH, J., delivered the opinion of the Court.

The parties to this proceeding were married in 1959. It was the second marriage for each. No children were born as a result of the marriage. The children of the parties by their prior marriages are grown and married. The age of Mr. Schuman does not appear in the record, but he testified that he was a retired civil service employee, having been so employed for 44 years. Mrs. Schuman was 57 years old at the time of the trial. Her recent employment has been "baby sitting". She stated she had had no other employment for a number of years, although she had worked previously.

The husband left the home on May 22, 1967, having left the bedroom of the parties approximately four months previously. It is apparent that serious friction had existed for quite some months prior to January of 1967. There was little verbal communication between the parties in the weeks immediately prior to the ultimate departure of Mr. Schuman from the home because, as Schuman put it, of the "screaming tirades" of his wife.

Mrs. Schuman filed suit for divorce *a mensa et thoro* on June 9, 1967. From the final decree awarding her such a divorce, alimony in the amount of $180.00 per month and counsel fees of $600.00, she appeals to this Court alleging that the award for alimony and the award of counsel fees are both inadequate. We agree, although not to the extent desired by her.

The net worth of the husband is approximately $79,000.00. He showed total monthly income from his civil service pension, a pension from Vitro Corporation, and social security of $591.00.

The addition of $190.00 net income from rental properties plus dividend and interest income produced a total net monthly income for the husband of $876.00. He estimated his total expenses at $549.00 monthly exclusive of any payment to Mrs. Schuman.

Mrs. Schuman estimated her total monthly expenses at $509.00. It is clear that the trial court awarded her alimony *pendente lite* in the amount of $324.00. We find ourselves puzzled as to just what else may have been included in the order. The statement of the case in appellant's brief indicates that this award was conditioned upon the defendant's "making the monthly house mortgage and other payments" amounting to $185.00. The order of court dated July 10 which appellant has printed in the record extract recites that appellee is making these payments but the actual order requires no such payment. This order calls for the $324.00 monthly award to account from June 29.

The alimony *pendente lite* order appearing in the record is not dated July 10, but June 29. There is no July 10 docket entry nor is there any July 10 order of any kind in the record. The June 29 order after directing payment of $324.00 per month beginning July 1 states:

> "Husband will make house payments of $127.00 plus realty taxes—award is based on this premise."

An alimony *pendente lite* order directing the husband to pay mortgage payments and real estate taxes on property owned by the parties as tenants by the entireties is unauthorized and void under our decisions. See *Roberts v. Roberts,* 160 Md. 513, 522, 154 A. 95 (1931); *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451 (1946); *Hull v. Hull,* 201 Md. 225, 232, 93 A. 2d 536 (1953) and *Tumminello v. Tumminello,* 205 Md. 609, 611, 109 A. 2d 776 (1954).

We were advised at oral argument of this cause that the home of the parties has now been sold.

It is an unfortunate fact of life that two people cannot live apart as inexpensively as they can live together. The innocent wife is entitled to alimony. The husband is entitled to live also. It is also true that parties estimating their expenses for the

purpose of determining what is proper alimony do not always proceed with the same precision with which an accountant would compute a profit and loss statement.

At oral argument appellant cited *Wygodsky v. Wygodsky,* 134 Md. 344, 106 A. 698 (1919) as authority for the proposition that once alimony *pendente lite* has been set, it may not be decreased by the trial court without a showing of changed conditions. That case did not so hold. It was an appeal of an alimony *pendente lite* order. Our predecessors there said:

> "The decree allowing the alimony in this case provides that it shall continue until 'the further order of the Court,' thereby reserving the right and power to the Court, to change or modify the decree as the conditions or other circumstances may require, either by increasing or diminishing the amount, as the case may demand. (citing authorities)
>
> "It is clear, therefore, that if the conditions have changed since the order of the 28th of October, 1918, allowing the alimony *pendente lite,* the Court below would be open to such proceedings as the appellant may be advised would be right and proper to be taken for a modification of the decree to an extent that would be sustained by evidence produced at the hearing." *Id.* at 348.

We do not ascribe unto the alimony *pendente lite* order the sanctity given to it by appellant. The amount of alimony remained within the sound discretion of the trial court. In *Donigan v. Donigan,* 208 Md. 511, 119 A. 2d 430 (1956) Judge (now Chief Judge) Hammond said for this Court:

> "* * * The award of alimony generally is a question of judgment on facts not in dispute and it is peculiarly the kind of determination which an appellate court feels freer to make than it does in matters which depend upon credibility, where the appearance and demeanor of the witnesses are important and the determination of disputed facts controls the case. Undoubtedly, this is the reason why this Court sometimes has changed the award of alimony, without expressly say-

ing (as necessarily was implicit in the decision) that the chancellor was clearly wrong." *Id.* at 521.

The criteria to be considered in an award of alimony were succinctly stated by Judge (now Chief Judge) Hammond in *Newmeyer v. Newmeyer,* 216 Md. 431, 140 A. 2d 892 (1958) as follows:

> "* * * [I]n reviewing the award of alimony by the chancellor, * * * the factors to be considered [are] the husband's wealth and earning capacity, the station in life of the parties, their physical condition and ability to work, the length of time they have lived together, the circumstances leading up to the divorce and the fault that destroyed the home * * *." *Id.* at 434.

The $509.00 per month desired by the wife would amount to more than 5/9 of the husband's income and the wife admits that this would produce a deficit of $22.00 per month for the husband by the wife's calculations of the husband's separate monthly needs. On the other hand, we do not believe the sum of $180.00 per month awarded by the chancellor below is adequate. We think the award of alimony should be increased to $300.00 per month, a little more than ⅓ of the husband's income.

We have no quarrel with the proposition advanced by the wife that, "except where it is shown that the wife has ample independent means of her own, the wife is generally entitled to have her counsel fees and expenses of the suit paid by her husband, regardless of whether the action for divorce is instituted by her or by her husband and regardless of merits of the case." In *Lopez v. Lopez,* 206 Md. 509, 112 A. 2d 466 (1955) the applicable law with reference to counsel fees was summarized as follows:

> "* * * In determining the amount of the counsel fee to be paid by the husband to the wife's solicitor, the court should take into consideration the financial circumstances of the parties, and determine the amount in accordance with the wife's necessities and the husband's financial ability, and allow an amount that will

afford the wife an efficient presentation of her side of the controversy." *Id.* at 520-521.

Appellant states that 60 hours were spent in the case in the Circuit Court and claims, therefore, that the fee should be $3000.00, or, in any event, not less than $1500.00 computed at $25.00 per hour as provided in certain minimum fee schedules. The trial judge said:

> "I think that the general thinking in the profession is to give him a fee based on approximately 60 hours at $25 an hour; however, under these circumstances I do not feel it is justified because that kind of money is just simply not here and even though Mr. Frosh has earned it and the Court knows that in domestic relation cases, particularly divorce cases, and I see it every day, lawyers do $5000 worth of work and get paid nowhere near that amount."

Considering the above criteria, the relative means of the parties and the fact that the allowance of a fee to counsel for the appellant does not preclude the appellant from supplementing that fee, we believe that a total fee of $1000.00 for the representation in the trial court and in this Court, $400.00 more than allowed in the Circuit Court, would be a proper fee.

> *Decree reversed and remanded for passage of a decree in accordance with this opinion. Costs to be paid by appellee.*