# BOWIS *v.* BOWIS

[No. 415, September Term, 1969.]

*Decided July 10, 1970.*

42

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Stanley R. Jacobs* for appellant.

*Stanley B. Frosh* for appellee.

FINAN, J., delivered the opinion of the Court.

The chancellor granted the wife, appellee, a divorce *a vinculo matrimonii* on the grounds of adultery. Although the husband, appellant, denied the charges in his answer, he offered no defense at the hearing. The chancellor also awarded the wife custody of the three minor children, a daughter aged 12 and two sons aged 9 and 8 respectively. The wife was awarded alimony of $150 per month and $300 per month for the support and maintenance of the children. The appellant was also required to return to the wife the full value of securities (approximately $7500) which had been a gift to the wife from her family, plus the sum of $475, as reimbursement for certain expenditures made out of the brokerage account of which the securities were a part. The wife was also allowed counsel fees in the amount of $1500. The husband appeals, contending that the awards for alimony, child support and counsel fees are excessive and that the chancellor erred in awarding the wife the full value of the jointly held stock acount and the cash reimbursement for expenditures from the stock account. We affirm the decree of the chancellor, save for the award of counsel fee which we believe should be reduced to $750.

The record reveals that the wife had part time employment, earning approximately $2000 per year. The husband's earnings as a stock broker fluctuated; however his gross earnings for the first six months of 1969 amounted to $5800 and the court below construed this as

supporting evidence for an annual gross income of $11,-600.

The chancellor further made a finding of fact that the husband had been contributing on an average of $800 per month as support and maintenance for the wife and family since October, 1968, and that the needs of the wife and children, consistent with the standard of living formerly enjoyed by the parties prior to the husband's leaving, are in excess of $900 per month. This is obviously beyond the present monthly gross earnings of the husband. It would also appear that for some time the family had been living beyond the financial means of the husband. However, on the basis of the standard of living to which the family had become accustomed and the current income of the husband, we cannot quarrel with the chancellor's determination that the wife and the children should receive $450 per month in alimony and support.

Various formulae have been recommended as guidelines for computing that portion of a husband's net income which should be awarded to the wife for alimony and as support and maintenance for children, such as those found in *The Section of Family Law of the American Bar Association*, 1964-65 Session, pgs. 76-86. Likewise, one may gather from reading *Schuman v. Schuman*, 252 Md. 13, 17, 248 A. 2d 876 (1969) ; *Hall v. Hall*, 238 Md. 191, 197, 208 A. 2d 593 (1965) ; and *Bradshaw v. Bradshaw*, 189 Md. 322, 326, 55 A. 2d 719 (1947), that this Court followed an approximate one-third rule of net income in awarding alimony where support for children was not involved. However, this Court has repeatedly emphasized the fact that there are no pat rules or statutory mandates to be followed in making awards for alimony and support and maintenance. Indeed, one is hard-pressed to find any area of law where the need is more compelling to tailor the remedy to the facts of each particular case. This was well stated by Judge McWilliams in *Burton v. Burton*, 253 Md. 233, 252 A. 2d 472 (1969) :

"The reports of our decisions abound in shopworn expressions of the principles of law which

are applicable here. What we said in *Waters v. Waters,* 191 Md. 436, 440-41 (1948), has been repeated and paraphrased in most of the cases which followed: [1] [See numerous Maryland decisions cited in footnote 1 pg. 236.]

'Although, in this case, the husband has been found guilty of adultery, the awarding of alimony is never a punitive measure. In determining an award of alimony and whether 'the wife's income is sufficient to care for her needs', the court should consider the husband's wealth and earning capacity, the station in life of the parties, age, physical condition, the ability to work, the length of time the parties have lived together, the circumstances leading up to the divorce, and the fault which destroyed the home. *Timanus v. Timanus,* 178 Md. 640, 642, 643, 16 A. 2d 918; *Doughtery v. Doughtery,* 187 Md. 21, 48 A. 2d 451, 457; *Bradshaw v. Bradshaw,* 189 Md. 322, 326, 55 A. 2d 719, 721. Also, of course, to be taken into consideration are the assets and income of the wife. *Hood v. Hood, supra,* 138 Md. page 360, 113 A. 895, 15 A.L.R. 774. In making such an award the court can only use judicial discretion. Of course, there is no special statute or rule governing this discretion. It must be exercised to the necessary end of awarding justice and based upon reason and law.' "

The court has applied the same general principles to those cases wherein support and maintenance of children is coupled with an award for alimony. See *Abrams v. Abrams,* 246 Md. 588, 594, 229 A. 2d 103 (1967); *Williams v. Williams,* 238 Md. 636, 637, 210 A. 2d 159 (1965); *Chalkley v. Chalkley,* 240 Md. 743, 744, 215 A. 2d 807 (1965); *Newmeyer v. Newmeyer,* 216 Md. 431, 434, 140 A. 2d 892 (1958); *Donigan v. Donigan,* 208 Md. 511, 519, 521, 119 A. 2d 430 (1956).

We also affirm the chancellor in his conclusion that the husband had no interest in the jointly held brokerage account. He found that there had been no intention on the part of the wife to make a gift to the husband of any interest in the $7500 worth of securities which had been originally a gift to her from her parents. It appears from the record that at the time the husband joined the stock brokerage firm of W. E. Hutton & Company the wife agreed to the placement of the stock in a "joint account" so that the husband might trade this stock on a short-term basis thereby achieving greater "buying power" in his job. While the wife in her testimony admitted that she knew that the profit from the stock trades were used for family support, nonetheless, the husband had agreed to return the stock to her. In fact, the husband admitted on cross-examination that he had agreed to return the stock account to the wife "at any time she wanted." While it is true that the husband used the income from the short-term stock trading to help support the family, the establishment of the account was more of a contribution to his "on the job training" and a help towards supporting the family than a gift to him. In such a situation the stocks representing the jointly held account were not in actuality a joint asset of the parties as the husband had never contributed anything toward the purchase of the securities nor had the wife ever made a gift to him of any interest in the securities. We think the case of *Lopez v. Lopez,* 206 Md. 509, 112 A. 2d 466 (1955) is apposite to the issue of the disposition of the account. In that case we said:

> "* * * While the Legislature has conferred upon each court of equity in the State the power to determine the ownership of personal property upon granting a divorce [the present authorization for this is found in Maryland Code (1966 Repl. Vol.), Art. 16, § 29], the court obviously cannot make an adjustment of property rights where the wife [in the instant case, the husband] never contributed anything toward

the purchase of the husband's property [in the instant case the wife's property]. *Tremper v. Tremper,* 39 Cal. App. 62, 177 P. 868; 2 *Schouler, Marriage, Divorce and Separation,* 6th Ed. sec. 1868." 206 Md. at 518.

See also *Gebhard v. Gebhard,* 253 Md. 125, 129, 130, 252 A. 2d 171 (1969).

We likewise find no merit to the appellant's contention that the chancellor erred in ordering him to reimburse the wife for one-half of the cost of an air conditioner installed in their home and one-half of certain payments of principal and interest on their home, title to which was jointly held by the parties. These payments had been made by funds withdrawn from the jointly held brokerage account.

Finally, we reach the question concerning the reasonableness of counsel fees. The chancellor had awarded the wife's attorney a fee of $1500; it is here that we disagree with the court's decree. We hasten to add, however, that our disagreement with the chancellor on this issue does not arise from any lack of appreciation of what appears to be very able representation rendered by counsel to the wife, but rather from our awareness of the very limited resources of the husband. As we said in *Donigan v. Donigan,* 208 Md. 511, 524, 119 A. 2d 430 (1956):

"* * * Undoubtedly, * * * the case had demanded unusual time and effort on the part of counsel over the period of several years. Yet, in divorce cases, what might have been earned and payable if the resources of the husband permitted it, often must be cut down because its payment would be unreasonable in relation to the means to pay. *Waters v. Waters, supra.* [191 Md. 436 at 441.]"

See also *Kennedy v. Kennedy,* 250 Md. 462, 243 A. 2d 527 (1968), wherein, due to the husband's straitened cir-

cumstances, we reduced an award for counsel fee in the amount of $2500 to $250.

> *Decree modified as to counsel fee and, as modified, affirmed, appellant to pay costs.*