## STEPHEN F. VERGES *v.* EVELYN M. VERGES

[No. 17, September Term, 1971.]

*Decided December 15, 1971.*

The cause was submitted on brief to THOMPSON, MOYLAN and GILBERT, JJ.

Submitted by *Walter W. Johnson, Jr.,* for appellant.

No brief filed on behalf of appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Stephen F. Verges, and the appellee, Evelyn M. Verges, were married on March 14, 1936, in Ellicott City, Maryland. Two children were born as a result of that marriage, both of whom have long since reached adulthood. The appellant was and is a practicing doctor of medicine in the District of Columbia.

Apparently for the psychological benefit of their daughter, the appellant sent the appellee, his then wife, and his daughter to live in Italy in 1957. The wife and daughter remained in Italy until 1962. During that time, the appellant provided for them.

Upon the return of the appellee-wife to this country in 1962, she found that her husband was involved romantically with another woman. The appellant suggested to the appellee that she should live separate and apart from him. She complied. An order was passed by the Municipal Court for the District of Columbia in October of 1962 directing the appellant to pay the appellee $600 per month for her separate support and maintenance. At some time in 1963, the appellant left this country and took up residence for approximately three years in Spain.

The appellee-wife filed for a divorce *a vinculo matrimonii* on June 2, 1965, in the Circuit Court for Montgomery County. The appellant-husband was served by publication. The final divorce decree was filed on February 10, 1966. Upon proper motion and by timely revision, it was amended to reserve jurisdiction in the court upon the question of alimony. The appellant-husband returned to the United States and Montgomery County in 1966.

On September 2, 1966, the appellee moved that the Circuit Court for Montgomery County fix the amount of alimony. The appellant moved to strike that motion. After a jurisdictional issue was decided adversely to the appellant, a hearing on the question of alimony was held before Judge John P. Moore, of the Circuit Court for Montgomery County, on March 1, 1967. Because of the transitional character of the appellant's occupational status at the time of that hearing, in that he was then considering transferring his practice to New York, Judge Moore ordered that he pay to the appellee $200 per month for a period of 90 days and that the entire matter be reset for an additional hearing at the end of those 90 days.

Through inadvertance or negligence, that rehearing was not set in conformance with Judge Moore's order. With no formal order directing him, the appellant-husband voluntarily paid and the appellee-wife accepted the sum of $200 per month for her support from March, 1967, until June, 1970. On May 11, 1970, the appellee-wife filed a petition for the fixing of permanent alimony. A hearing was set before the Domestic Relations Master and was heard by the Master on October 5, 1970. The report of the Master was filed with the court on October 21, 1970. The Master's report recommended that the appellant-husband be required to pay to the appellee-wife alimony in the amount of $400 per month.

Pursuant to that recommendation, a final decree was signed by Judge Ralph G. Shure, of the Circuit Court for Montgomery County, on October 28, 1970, fixing alimony in the amount of $400 per month. On November 2, 1970, the appellant-husband filed exceptions to the Master's recommendations and requested a hearing before the court. On November 6, 1970, Judge Kathryn J. Shook entered an order overruling the appellant's exceptions on the ground that they had not been timely filed. On November 30, 1970, the appellant filed a Motion to Vacate the Decree awarding alimony, pointing out to the court

that the exceptions had, indeed, been timely filed. On January 12, 1971, two separate orders were signed by Judge Shook. The first order, recognizing that the appellant was correct in his contention that his exceptions had been timely filed, granted the appellant's petition to strike that order and indicated that the court would reconsider the exceptions. The second order, without benefit of hearing or oral argument, overruled the appellant-husband's exceptions. On January 14, 1971, Judge Shook signed a final decree fixing alimony in the amount of $400 per month.

Upon this appeal, the appellant-husband contends that the alimony award of $400 per month was excessive and he requests that this Court exercise its power to reduce the award to a reasonable amount.

A word is in order about the latitude which is appropriately ours in reviewing a decision of the chancellor below on the question of alimony. As Judge (now Chief Judge) Hammond said for the Court of Appeals in *Donigan v. Donigan,* 208 Md. 511, at 521:

> "The award of alimony generally is a question of judgment on facts not in dispute and it is peculiarly the kind of determination which an appellate court feels freer to make than it does in matters which depend upon credibility, where the appearance and demeanor of the witnesses are important and the determination of disputed facts controls the case. Undoubtedly, this is the reason why this Court sometimes has changed the award of alimony, without expressly saying (as necessarily was implicit in the decision) that the chancellor was clearly wrong."

There is, *a fortiori,* reason for latitude in this case since we have here the precise situation facing the Court of Appeals in *Donigan,* whereof Judge Hammond said further, at 521:

> "In the case before us the chancellor did not see the witnesses and decided the case from the rec-

ord, even as do we, without the benefit of oral argument which we have enjoyed, so that his opportunity for a sound exercise of judgment was not as great as ours."

A myriad of factors interplay in determining an appropriate award of alimony. As Chief Judge Murphy said for this Court in *Quinn v. Quinn,* 11 Md. App. 638, at 643:

"It was held in *Waters v. Waters,* 191 Md. 436, that in determining an award of alimony and whether, under the statute, the wife's income 'is insufficient to care for her needs,' the court should consider the husband's wealth and earning capacity, the assets and income of the wife, the station in life of the parties, their age, physical condition, and ability to work, the length of time the parties lived together, the circumstances leading up to the divorce, and the fault which destroyed the home. To the same effect, see *Burton v. Burton,* 253 Md. 233; *Newmeyer v. Newmeyer,* 216 Md. 431. The husband's overall financial ability to support (and not merely his current income), and the wife's need for support are controlling factors. *Willoughby v. Willoughby,* 256 Md. 590; *Pet v. Pet,* 238 Md. 492; *Gosnell v. Gosnell,* 208 Md. 179; *Lopez v. Lopez,* 206 Md. 509. In view of the variable factors to be considered in determining the alimony award, no fixed rule exists whereby the amount of the award is based on a percentage of the husband's wealth or income. *Bowis v. Bowis, supra.*"

At the hearing before the Master, it was brought out that the appellee-wife is living in what was formerly the family domicile at 11607 Viers Mill Road in Silver Spring. At the time of that hearing, she was 57 years of age. Living with her was her seven-year-old granddaughter. She received some independent support for the care and

maintenance of the granddaughter. Based upon a financial statement submitted by her, the Master found that the monthly living expenses of the appellee were $438. The appellee is unemployed. She does derive an income of approximately $135 each month from a combination of dividends on investments and the sale of a piece of real property. Her financial statement indicated an additional income of approximately $50 per month for babysitting services she renders.

The appellant-husband was 62 years of age at the time of the hearing. He testified before the Master that he had had indications and warnings of heart trouble. He complained of increasingly impaired vision due to glaucoma and incipient cataracts. He had been told not to drive a car. He testified that he shared office space in the suite of another doctor but was restricted in the use of office facilities to the morning hours. He indicated that he was only able to practice and to receive patients from 7:30 a.m. until 12 noon on weekdays. He did not have a nurse working with him; he received limited stenographic support from the secretary of the doctor who leased him his office during the morning hours; and he had, a little more than a year previously, had to discontinue the use of an answering service because of the expense involved. He testified, and the Master found, that since returning from Spain in 1966, he had been without hospital privileges at any hospital in the Washington, D.C.-Montgomery County area.

Although the appellant had in earlier years had an income of as high as $27,000 before taxes, his 1968 Federal Income Tax Return showed gross receipts of only $15,685, with expenses of $7,564.45, for an operating profit (before taxes) of $8,119.55. His Federal Income Tax Return for 1969 showed a net operating profit (before taxes) of only $7,751.53. He testified that his income for the calendar year 1970 had been, through October, approximately the same as that for 1969. The appellant indicated that his monthly net income, after

business expenses, deductions, income taxes, and Social Security, was $525. He indicated that his living expenses, exclusive of alimony, were $483 per month.

The evidence as to both income and living expenses furnished by each of the parties was not seriously disputed by the opposing party.

The recommendation of the Master, accepted by the chancellor, appears clearly to have been based not upon the evidence adduced but rather upon the more speculative (or intuitive) conclusion of the Master that:

> "The defendant claims not to be able to earn more than $646.00 gross per month. Yet, on the stand, to the undersigned, he appeared to be in reasonably good health and stated he was able to maintain office hours each day from 7:30 o'clock A.M. to Noon. In addition, as the defendant, himself testified, there were times when he earned as much as $27,000.00 income before taxes. With the known short supply of doctors, it seems almost inconceivable that a physician in the general metropolitan area of the Nation's capitol would be taking in a gross amount monthly of $646.00."

We do not hesitate to hold that the award of alimony in this amount, based on so speculative a predicate, was clearly erroneous. An award of $400 per month, added to the approximately $185 per month she was receiving from other sources, would give the appellee an income almost $150 in excess of her claimed monthly living expenses. On the other hand, an award of $400 per month, subtracted from the monthly net income of the appellant of $525, would leave him with but $125 per month to meet his estimated living expenses of $483 per month. We agree with Judge Smith in *Schuman v. Schuman*, 252 Md. 13, when he pointed out, at 15:

> "It is an unfortunate fact of life that two people cannot live apart as inexpensively as they

can live together. The innocent wife is entitled to alimony. The husband is entitled to live also."

We believe that alimony in the amount of $225 per month would be proper and more in keeping with the standards laid down in *Newmeyer v. Newmeyer*, 216 Md. 431, 435, and *Quinn v. Quinn, supra*. Without suggesting that a mechanical formula can ever govern in such cases, we point out that this would represent approximately ⅓ of the appellant-husband's net income before taxes. As is always the case, alimony awards are subject to revision as circumstances change.

> *Order awarding alimony modified to read $225 per month; and, as so modified, affirmed; costs to be paid by appellant.*