# HERBERT BIRDSALL *v.* MARJORIE BIRDSALL

[No. 88, September Term, 1974.]

*Decided November 21, 1974.*

The cause was argued before MORTON, MOORE and LOWE, JJ.

*Walter W. Johnson, Jr.*, for appellant.

*Jackson Brodsky*, with whom was *Jeffrey N. Greenblatt* on the brief, for appellee.

Moore, J., delivered the opinion of the Court.

Appellant-husband, a corporate executive earning in excess of $50,000 per year, appeals from an award of alimony in the sum of $1800 per month and child support of $200 per month contained in a decree granting the wife a divorce *a vinculo* on grounds of adultery. The parties were married for 27 years and had four children, one of whom is deceased. The three other offspring have attained their majority.[1]

The husband's adultery was clearly established. It reoccurred (with the same paramour) after the dismissal by the wife of a prior divorce action based on adultery followed by a reconciliation to which she agreed in the interest of the family and upon condition that the illicit relationship would cease.

The record discloses that the parties and their children had enjoyed a comfortable standard of living. For approximately six years prior to the trial, they occupied a country home on $5^1/_2$ to 6 acres in Germantown, Montgomery County, Maryland, with an outdoor swimming pool, spacious patios and other amenities. The wife's estimate of the value of the property was in the range of $165,000 to $200,000. The husband's financial statement assigned it a valuation of $115,000. At the time of trial the husband was occupying the daughter's former bedroom on the second floor and testified that he intended to reside in the dwelling even after a divorce. The wife continued to occupy the master bedroom on the first floor, sharing it (upon advice of counsel) with her mother who came to live

---

1. The youngest child, who had suffered a nervous breakdown approximately one year prior to trial and for whom the $200 per month was awarded, became 18 years of age on March 18, 1974. As of that date, the father was relieved of the child's support payment. Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Art. 1, § 24. Under Code (1957, 1971 Repl. Vol.) Art. 27, § 97, however, the parent of an adult destitute child unable to support himself by reason of "mental or physical infirmity" may be found guilty of a misdemeanor for failure to support such child. As noted, *infra*, the father contends on this appeal that if the wife's claimed expenses for the child were correct, her own living expenses would not have required alimony payments of $1800 per month; or otherwise stated, that the sum of $1800 was not a reasonable allocation of the total payment of $2000.

with her prior to the filing of the bill of complaint in April, 1973. The parties' two sons also resided there, the older one of whom contributed $25 per week for his support. The wife's mother contributed approximately the same amount.

The record discloses that the husband is a vice-president of Colonial Carpets Inc., a retail sales organization with two outlets in Virginia and one in Maryland, with gross sales in 1973 of approximately $1,800,000. He is the owner of a 49% stock interest in the business purchased for $50,000 in 1961. His salary from Colonial was $700 per week and he received another $200 per week salary from a carpet installation business known as B. & L. Installations. In addition, he was paid commissions from an organization known as General Felt Industries aggregating, in 1973, $4,586.34. Thus, his total earnings for the calendar year 1973 were $51,386.34. In addition, the Carpet Company provided him with hospitalization, vacations, and a B.M.W. automobile including gasoline, maintenance and repair services.

The husband's assets, as shown on his financial statement, were in the sum of $192,138 against which were listed liabilities of $57,666.66. The latter included the house mortgage of $35,000, an obligation to his own company in the sum of $15,000 and a note in the sum of $7,666.66. The note, however, was a deed of trust note secured by real property in Virginia, and was signed by the husband as an accommodation endorser only. Mr. Birdsall's assets, in addition to the stock interest in the business and his equity in the matrimonial residence, included a 23-foot Thunderbird motorboat which he purchased for $6,000 and valued at $2,000, an interest in a Tennis Club in Virginia claimed to be worth $1,000 after an original investment of $5,000, and an interest in a joint venture valued by him at $18,000 after an original investment exceeding $28,000.

The husband's total expenses were stated at $3,208.84 per month. This, however, included *pendente lite* alimony and support of $415, attorney's and investigator's fees in the amount of $378, house maintenance of $388.24, meals outside the home at $390 and recreation and entertainment

in the sum of $338.62. Several of the above items of expense were plainly overstated. Moreover, certain of the husband's answers concerning his financial requirements were not such as would impress the Chancellor with their accuracy and reliability. The following testimony of the appellant on cross-examination is illustrative:

"Q. Now, you have transportation at the rate of $85.00 a month?

A. That is right.

Q. And what is that for?

A. Well, I get charged back for a percent of my gas and by Internal Revenue if they don't allow it, I tried to deduct the whole thing and the last time they tried to allow me ten percent which is highway robbery, and I am trying to get it back from them. Who knows.

Q. Well, but so far this year you have, you are being charged the entire cost of your transportation to Colonial, is that right?

A. I charge it to Colonial."

The wife's financial statement reflected income from dividends on shares of stock inherited from her father in the sum of approximately $50 per month. She had been employed before the marriage as a secretary and, several years prior to the trial, had worked temporarily in a women's apparel shop. Her assets included the aforementioned inherited shares of stock with a value of approximately $13,200, a 1973 Thunderbird given to her by her husband, a savings account of approximately $1,000 and a small checking account. In addition, she claimed an equity in the home and an interest, unspecified, in the husband's carpet business. The only liability listed by Mrs. Birdsall was the home mortgage.

The wife's testimony, unrebutted, was that during the marriage she managed the household and paid the household bills except for large maintenance costs and auto expenses. The money expended by her, according to her testimony,

averaged between $1,200 and $1,300 each month, not including domestic help, transportation, entertainment and taxes. Her projected monthly expenses for herself and the then minor child, assuming their living in a rental unit rather than the home, were in the sum of $2,193, including an estimate of federal and state income taxes of $250 per month. Her specific expenses were listed as follows: rent $450, food $350, clothing $210, medical/dental $75, transportation $75, recreation and vacation $150, insurance and hospital $120, realty taxes $160, light and telephone $120, heat (oil) $33 and incidentals $200.

At the conclusion of the trial the chancellor delivered an oral opinion from the bench and, after holding that the wife had clearly sustained the burden of proof with respect to the husband's adultery, found that the husband "has a capacity to earn in excess of $50,000 a year and . . . there is no indication . . . of reducing his income significantly below that amount." The court also observed that the husband enjoyed "a great variety of the amenities of life and apparently he has shared these with his family, at least in part, over the course of their married life, and they have established a station in life which is quite substantial. . . ."

Before concluding that a reasonable amount of alimony would be $1,800 per month, the chancellor noted that the wife had not currently been employed and that her station in life had not required employment; and further that she was at an age "where opportunities for employment are indefinite and uncertain" and that the record did not support the availability of any particular employment at that time. The court also remarked that the wife was "wronged" by the husband's conduct and that there was nothing to indicate that she contributed in any way in the fault that destroyed the home.

The essence of the husband's complaint on this appeal is that, after payment of federal, state and local taxes, he has a net income of approximately $36,786; that on a monthly basis this leaves approximately $3,000 "after-tax dollars" available for the support of himself and his former wife; and

that the court's decree results in his being required to pay 66 $^2/_3$ per cent of his net income in support payments. Our analysis of the arithmetical computations presented in appellant's brief demonstrates that his statements are inaccurate. We turn first, however, to a consideration of appellant's legal contentions.

## I

We flatly reject two major premises advanced by the husband: (a) that *Donigan v. Donigan*, 208 Md. 511, 119 A. 2d 430 (1956) altered the general rule that the chancellor is entrusted with wide discretion in making an award of alimony which should not be disturbed on appeal unless it was arbitrarily used or his judgment was clearly wrong; and (b) that the Court of Appeals in *Bowis v. Bowis*, 259 Md. 41, 267 A. 2d 84 (1970) approved a one-third-of-net-income rule as a "suggested guideline" to be followed in awarding alimony.

In *Donigan*, the chancellor denied alimony and the Court of Appeals held this action clearly erroneous.[2] It was not a case where, as here, the equity court heard testimony and oral argument. There the Court stated (p. 521):

> "In the case before us the chancellor did not see the witnesses and decided the case from the record, even as do we, without the benefit of oral argument which we have enjoyed, so that his opportunity for a sound exercise of judgment was not as great as ours."

The observations of the Court in *Donigan* are patently applicable only to the procedural posture of that and similar cases where the lower court made its determination on the basis of a record and recommendations submitted to it. Where the lower court has heard the testimony and seen the witnesses, the scope of appellate review is more limited. As

---

**2.** Quoting from the opinion of Hammond, J. (later Chief Judge) in Donigan, appellant's brief omits the first sentence of the partially quoted paragraph: "We think the chancellor was clearly wrong in refusing alimony."

the Court of Appeals stated in *Lopez v. Lopez,* 206 Md. 509, 520, 112 A. 2d 466 (1955):

"The Court of Appeals has the right to review the amount of alimony allowed, *but the award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong.*" (Emphasis added.)

*See also Willoughby v. Willoughby,* 256 Md. 590, 261 A. 2d 452 (1970).

As for any percentage guidelines in the determination of awards of alimony, the husband's interpretation of *Bowis, supra,* is erroneous. In *Bowis,* the late Judge Finan writing for the Court observed that in three cases [3] "one may gather . . . that this Court followed an approximate one-third rule of net income in awarding alimony where support for children was not involved." [4] He quickly added, however, that the Court of Appeals has "repeatedly emphasized the fact that there are no pat rules or statutory mandates to be followed in making awards for alimony and support and maintenance," and concluded:

*"Indeed, one is hard-pressed to find any area of law where the need is more compelling to tailor the remedy to the facts of each particular case."* (p. 43) (Emphasis added.)

Citing *Bowis,* this Court held in *Quinn v. Quinn,* 11 Md. App. 638, 276 A. 2d 425 (1971) that:

". . . *[N]o fixed rule exists whereby the amount of the award is based on a percentage of the husband's wealth or income."* (Emphasis added.)

Indubitably, the Court of Appeals and this Court have, in passing, made note of the percentage relationship between

---

**3.** Schuman v. Schuman, 252 Md. 13, 248 A. 2d 876 (1969); Hall v. Hall, 238 Md. 191, 208 A. 2d 593 (1965); and Bradshaw v. Bradshaw, 189 Md. 322, 55 A. 2d 719 (1947).

**4.** In Schuman and Hall, as noted *infra,* the term "net income" meant before taxes. In Bradshaw the Court deducted the husband's taxes.

the award to the wife and the husband's "net income," sometimes adverting to the effect of income taxes and sometimes not.

Thus, in *Schuman, supra,* n. 3, the Court of Appeals, in an opinion by Smith, J., found that an award of alimony of $180 per month was inadequate and "should be increased to $300 per month, a *little more than* ¹/₃ *of the husband's income.*" (Emphasis added.) (252 Md. at p. 17). There, the Court found from the record that the husband's net worth was $79,000 and his "total net monthly income" was $876, derived from two pensions, from "net income" on rental properties and from dividend and interest income. Although the Court did not specify whether the "net income" was before or after taxes, it does appear that the term was used in a business or accounting sense, *i.e.,* after business expenses but before taxes.[5]

And in *Hall, supra,* n. 3, the Court of Appeals, in an opinion by Powers, J., Associate Judge of the Seventh Judicial Circuit, specially assigned, held that "the allowance by the chancellor to the wife of $300 a month, *being approximately one-third of the husband's net income,* without proof that he has assets of any substantial value, is not clearly erroneous and accordingly, this finding will not be disturbed. Maryland Rule 886 a." (Emphasis added.)

The husband's income tax payments were noted by Judge Delaplaine for the Court of Appeals in *Bradshaw, supra,* n. 3, wherein it was held that an award of $210 per month "*is about 30 per cent of the husband's income after payment of*

---

**5.** As stated by the Connecticut Supreme Court in Sturtevant v. Sturtevant, 146 Conn. 644, 153 A. 2d 828 (1959):

"In general accounting practice, net income, as applied to this case, would ordinarily consist of the total income received by the defendant from all sources, less the legitimate expenses of realizing it, such as office expenses or other expenses of practice. * * * A deduction of the alimony paid to the plaintiff during the year covered by the return, even though presently authorized for income tax purposes, should not be made in computing the net income of the defendant under the agreement, since the payment of alimony would not constitute an expense incurred in realizing income." *Id.* at 648.

*the income tax.* This is not so excessive as to oppress him." (Emphasis added.) (189 Md. at p. 326). The Court observed that the husband's 1946 income was $8,439.87 on which he paid a federal income tax of $1,559.86.

Reducing an award of $400 per month to $225 per month in *Verges v. Verges,* 13 Md. App. 608, 284 A. 2d 451 (1971), this Court in an opinion by Judge Moylan, observed that the modified award was ¹/₃ of the husband's income before taxes:

> "We believe that alimony in the amount of $225 per month would be proper and more in keeping with the standards laid down in *Newmeyer v. Newmeyer,* 216 Md. 431, 435, and *Quinn v. Quinn, supra. Without suggesting that a mechanical formula can ever govern in such cases, we point out that this would represent approximately ¹/₃ of the appellant-husband's net income before taxes.* As is always the case, alimony awards are subject to revision as circumstances change." (Emphasis added.) [6]

Analyzing the income and expense evidence of the respective parties' income in *Verges,* Judge Moylan found that the wife's earnings of $185 per month added to the $400 award recommended by the Domestic Relations Master would **produce almost $150 per month in excess of her claimed** monthly living expenses; [7] whereas the husband's net income of $525 after business expenses and taxes would be reduced by the award to $125 per month with which to meet his estimated living expenses of $483 per month.

Of course, even where no percentage is disclosed in the opinion of the appellate Court, the reader may make the arithmetical computation upon the basis of the facts stated. Thus, in *Bowis, supra,* Judge Finan noted that the chancellor

---

6. The modified award of $225 per month along with the wife's other income equaled 61% of the husband's before-tax income.

7. It appears that the wife offered no testimony concerning her past or anticipated tax liability.

found supporting evidence for an "annual gross income" of $11,600. The alimony award of $150 per month and the allowance of $300 per month for the support of the three minor children, represented 48% of the husband's income before taxes. Furthermore, since the wife herself had earnings of $2,000 per year, this sum added to the alimony and support payments of $5,400 per year represented total annual cash receipts by the wife of $7,400, this being 64% of the husband's income before taxes.

Similarly, one may calculate that the award of alimony and support of $1,600 per month in *Burton v. Burton,* 253 Md. 233, 252 A. 2d 472 (1969), *supra,* equalled 35% of the husband's income before taxes. The husband's net worth was $400,000 and the chancellor stated: "In deciding this case I am assuming an income of Mr. Burton of about $55,000 a year before taxes. . . . After taxes that gets down to about $43,000 a year for 1967."

Where allegedly disproportionate percentage figures specifically argued on appeal and the reviewing court orders a reduction of the award, it obviously must not be inferred in Maryland that the reduction was mandated for the principal purpose of lowering the percentage. For example, in *Gebhard v. Gebhard,* 253 Md. 125, 252 A. 2d 171 (1969), it was contended that an alimony award of $525 per month was excessive and amounted to approximately 54% of the husband's income for the year 1968, estimated at $11,500. The Court of Appeals modified the award, reducing the monthly payments to $400, stating that this amount "would be proper and more in keeping with the standards laid down in *Newmeyer, supra."* [216 Md. 431, 435, 140 A. 2d 892 (1958)]. The wife in *Gebhard* was afflicted with an incurable disease. The sum of $400 per month represented 42% of the husband's income. This percentage was not stated, however, in the opinion of the Court. The modified payment was characterized as "more than is normally awarded on an income of the husband of $11,500. It takes into consideration the medical expenses of the wife." The award was based, as is proper, on the needs and financial circumstances of the parties and not on a specified percentage.

Strikingly demonstrative of the broad range of factors to be considered in making an award of alimony and the unreliability at times of even the husband's taxable income or adjusted gross income as indicators of his ability to pay, is the case of *Quinn v. Quinn,* 11 Md. App. 638, 276 A. 2d 425 (1971), *supra.* There the husband held complete stock control of a mechanical contracting corporation of which he was president. The chancellor granted the wife a divorce *a mensa et thoro* on the ground of constructive desertion and awarded alimony in the sum of $4,000 per month. The husband received an annual salary of $65,000. His assets were valued by his wife's accountant, Thomas O'Neil, at $2,489,565 and by his own accountant at 1.4 million. Mr. O'Neil also made a determination that the husband's "net cash flow" was $144,493 annually — composed of his salary and certain retained net earnings of the corporation.

Chief Judge Murphy, then writing for this Court, noted that the alimony award of $48,000 per year constituted exactly one-third of the above cash-flow figure of $144,493. He concluded, however, that the chancellor had overstated the husband's ability to pay by "attributing to him substantial corporate profits not then reasonably available to him." Continuing, Chief Judge Murphy stated (p. 650-1):

> "We need not, however, undertake to determine with mathematical precision just how much money the husband has reasonably available to him with which to pay alimony to the wife. *Under the facts of this case, it is obvious that neither the husband's taxable income or his adjusted gross income are reliable indicators in this regard. At the least, in this case, the husband's gross salary and other current income must be taken into account in assessing his overall financial ability.* But also to be taken into account, and considered along with the husband's financial condition, is the key element of the wife's need for support, a need to be measured in light of her own income and assets and the standard of living to which she had become accustomed." (Emphasis added.)

The Court then concluded that upon consideration of all relevant factors including living expenses, tax consequences, health, fault of the husband, age, and ability to work, a proper award would be $2,250 monthly instead of $4,000 and the decree was modified. (The modified award of $2,250 monthly represented 41% of the husband's income before taxes of $65,000.)

Accordingly, we restate with emphasis that in Maryland the only statutory guideline is that contained in Code, 1957 (Vol. 2A, 1973 Repl. Vol.) Art. 16, § 5, that the court shall not award alimony or alimony *pendente lite* "unless it shall appear from the evidence that the wife's income is insufficient to care for her needs"; and that the guidelines to be followed on the basis of decisional law are not percentage figures which from time to time appear in appellate opinions or can be derived mathematically from the facts of record.[8] They are rather, in the words of now retired Judge McWilliams in *Burton v. Burton, supra,* the "shopworn expressions," with which opinions of the Court of Appeals and this Court abound, concerning the principles of law which are applicable, as stated in *Waters v. Waters,* 191 Md. 436, 440-1, 62 A. 2d 250 (1948):

> "Although, in this case, the husband has been found guilty of adultery, the awarding of alimony is never a punitive measure. In determining an award of alimony and whether 'the wife's income is insufficient to care for her needs,' *the court should consider the husband's wealth and earning capacity, the station in life of the parties, age, physical condition, the ability to work, the length of time the parties have lived together, the*

---

8. *See, Nelson on Divorce and Annulment,* Vol. 2, § 14.37, where the author points out that some states provide by statute that an award of alimony shall not exceed one-third of the income of the husband; and that by court decisions in some states the general rule is to award the wife approximately one-third, "although the modern trend is to award the wife a share much larger than one-third or one-half, if the circumstances warrant such larger award, so that an allowance of alimony to a wife of between one-third and one-half or more of her husband's earnings is not unreasonable or unusual." (citations omitted.)

*circumstances leading up to the divorce, and the fault which destroyed the home.* [citations omitted] *Also, of course, to be taken into consideration are the assets and income of the wife.* [citations omitted] In making such an award the court can only use judicial discretion. Of course, there is no special statute or rule governing this discretion. It must be exercised to the necessary end of awarding justice and based upon reason and law." (Emphasis added.)

## II

With respect to the arithmetical contentions made by appellant, we note that he is now represented by other counsel and did not offer to the court below the tax calculations contained in his brief on appeal. While we recognize that income tax consequences cannot be fully projected until the trial court has ruled, it is nevertheless apparent that the impact of taxes can — and should — in many cases be anticipated and brought to the attention of the trial court; and it rests, of course, within the discretion of the chancellor to grant upon appropriate motion a reconsideration of an award should the tax impact of the allowances made result in claimed unfairness. We do not, however, consider it within the proper scope of appellate review to undertake income tax analyses on the basis of computations presented for the first time in appellate briefs.

Our only observation, therefore, on the percentage figures claimed by the husband to be excessive is that the chancellor's alimony award in this case when combined with the wife's other income represented approximately 43% of the husband's before-tax income of $51,386. (In addition, this figure for the husband's "income" does not include his substantial "fringe benefits," heretofore noted.) This is not out of proportion to awards affirmed in prior cases. *See, Verges, supra, Gebhard, supra, Quinn, supra. See also, Sullivan v. Sullivan,* 223 Md. 74, 162 A. 2d 453 (1960).

In addition, we consider it misleading to discuss, as appellant's brief does here, the tax consequences to one

party without considering the tax consequences to the other.[9] In this case the wife's tax burden should be proportionately greater on her alimony income than the burden on the husband since he receives the benefit of a deduction for the alimony payments.

We conclude that the chancellor took due account of the elements properly to be considered and did not abuse his discretion in making the award to the wife. We also conclude that the husband's contention that there was an improper allocation between the wife and the then minor son is unsupported. The chancellor should have set down in greater detail his reasons for concluding that $1,800 per month was a reasonable amount. *Cf. Burton v. Burton, supra.* Nonetheless we are unwilling to say that on the record which was before him the award was clearly wrong.

*Judgment affirmed; appellant to pay the costs.*

---

**9.** We reject out of hand appellant's representation in his brief that there is an additional tax liability of $314 per month "as a result of a deficiency in the withholding of taxes from his wages by his employer." That there was insufficient withholding does not, of course, affect the taxpayer's total annual tax liability. In this regard we find somewhat misleading appellant's reference in brief to his 1972 income tax return showing a balance due of $6,050.66. This amount was not reported on his financial statement as a liability and presumably was paid at the time his U.S. individual tax return (Form 1040), prepared by an accountant, was filed.