# DOROTHY JOYCE *v.* OSLER COLLINSON JOYCE

[No. 265, September Term, 1970.]

*Decided December 8, 1970.*

The cause was argued before Orth, Thompson, and Moylan, JJ.

*Bernard J. Sachs,* with whom were *Phillip H. Goodman* and *Francis J. Meagher* on the brief, for appellant.

*Wallace Dann,* with whom were *Howard Calvert Bregel* and *Calvert Ross Bregel* on the brief, for appellee.

Orth, J., delivered the opinion of the Court.

### CHATTELS PERSONAL AND THE MARRIED WOMAN

Blackstone designated twelve methods by which personal property could be acquired or lost. The sixth mode was marriage.[1] By marriage the husband acquired chattels personal and the wife lost them. Because of "the notion of unity of person between the husband and wife, it being held, that they are one person in law, so that the very existence of the woman is suspended during the coverture, or entirely merged into that of the husband," chattels which formerly belonged to the wife were, by act of law, vested in the husband, with the same degree of property and the same powers, as the wife, when sole, had over them. * * * As to chattels personal or choses in possession which the wife has in her own right, as ready money, jewels, household goods, and the like, the

---

1. Blackstone's *Commentaries on the Law* (Gavit Ed.) Ch. XXVI, p. 453. The eleven other methods were occupancy, prerogative, forfeiture, custom, succession, judgment, gift or grant, contract, bankruptcy, testament, and administration.

Chattels personal "are things movable, which may be annexed to or attendant on the person of the owner, and conveyed by him from one place to another. Such are animals, furniture, money, jewels, grain, garments, and the like." Id., Ch. XXIV, p. 443.

Property in chattels personal may either be an absolute or qualified property in possession or a property in action. For a full discussion of property in chattels personal see Id., Ch. XXV, pp. 445-449 and Gavit's notes, pp. 450-452.

husband has therein an immediate and absolute property devolved in him by the marriage, which never can again revest in the wife or her representatives." [2] There was one instance, however, in which the wife acquired a property in some of her husband's goods and as to such goods they remained to her after his death and did not go to his executors. "These are called her *paraphernalia*, a term used in the civil law, and derived from the Greek, signifying something over and above her dower. In our law it signifies the apparel and ornaments of the wife, suitable to her rank and degree. These she retains at the death of her husband, over her jointure or dower. The husband cannot bequeath by his will such ornaments and jewels of his wife, though perhaps during his life he might have the power to dispose of them. But if she continues in their use until her husband's death, she shall afterwards retain them against all persons, except creditors, where there is a deficiency of assets." [3] See *Bayne v. State, Use of Edelen,* 62 Md. 100, 104.

The common law rights of the husband in the chattels of his wife have been completely repudiated. Code, Art. 45, § 4 provides:

> "Married women shall hold all their property of every description for their separate use, as fully as if they were unmarried, and shall have all the power to dispose of by deed, mortgage, lease, will or any other instrument that husbands have to dispose of their property, and no more." [4]

---

2. Id., Ch. XXIX, pp. 469-471. As to choses in action the husband could have them if he pleased by reducing them into possession by receiving or recovering them at law. Upon such receipt and possession they were absolutely his own, went to his executor or administrators and did not revest in the wife. But if the husband died before he had received or recovered them, they survived to the wife. The law was the same as to chattels real where the wife survived the husband. But where the husband survived the wife he attained the chattel real by survivorship.

3. Id., Ch. XXIX, pp. 471-472. Blackstone notes that where there is a deficiency of assets and her paraphernalia is seized by the husband's creditors, the wife may recover its value from the heir, where the real estate is sufficient.

4. The married woman's liberation from the strictures of the

The pellucid status of the law today leaves no distinction as to property in chattels personal between a husband and a wife. The husband retains property in the chattels personal which were his when he entered the marital status and holds for his sole and separate use the chattels personal he acquires during coverture;[5] the wife

common law was gradual in Maryland. Acts 1841, Ch. 161 provided: "That no real estate hereafter acquired by marriage, shall be liable to execution during the life of the wife, for the debts due from the husband." Acts 1842, Ch. 293 enabled any married woman to become seized or possessed of any property, real or of slaves, by direct bequest, demise, gift, purchase or distribution, in her own name and as her own property except that from her husband after coverture. And by it she was allowed to hold, sell or dispose of real or personal property to her sole and separate use to the value of $1000, if earned "by her skill, industry or personal labour." Acts 1853, Ch. 245 was passed in compliance with a constitutional provision which declared "That the General Assembly shall pass laws necessary to protect the property of the wife from the debts of the husband during her life, and for securing the same to her issue after her death." Constitution, Art. 3, § 38. Ch. 245 provided as does Code, Art. 45, § 1 today: "The property, real and personal, belonging to a woman at the time of her marriage, and all the property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, bequest, descent, in the course of distribution, by her own skill, labor or personal exertions, or in any other manner, shall be protected from the debts of the husband, and not in any way be liable for the payment thereof," with a proviso when made in prejudice to rights of existing creditors. But Ch. 245, said the Court of Appeals in *Schindel v. Schindel*, 12 Md. 294, while it protected the property of the wife from the debts of the husband, did not "in any other respect, alter or impair the marital rights of the husband therein." At 313. See also Acts 1892, Ch. 267; Acts 1898, Ch. 457; Acts 1929, Ch. 398. It was Acts 1898, Ch. 457 which provided as does present Art. 45, § 4 but added a proviso that a married woman under eighteen could not dispose of any of her property unless her husband united therein. This left the law in the incongruous position of permitting a married woman under the age of 18 years to convey property with her husband but a married woman between eighteen and twenty-one years could not do so even if her husband united therein. Acts 1914, Ch. 406 deleted the proviso, leaving the law as it exists today. And by Art. 45, § 3 it is not necessary that a married woman have a trustee to secure to her the sole and separate use of her property. See *Unger v. Price*, 9 Md. 552. The constitutional provision referred to above was in the Constitution of 1851. The provision in the Constitution of 1867, our present law, provides, Art. III, § 43: "The property of the wife shall be protected from the debts of the husband."

5. However, the statutory law does not relieve a husband of the common law obligation to maintain his wife and to pay for medical attendance upon her. *Kerner v. Eastern Dispensary and Cas. Hospital*, 210 Md. 375. But he may, if he thinks that the pledging of his credit by his wife for necessaries is being abused, apply

retains property in the chattels personal which were hers when she entered the marital status and holds for her sole and separate use the chattels personal she acquires during coverture.

We are led to inquire by this case as to the rights of each spouse in chattels personal upon termination of the marital status. In the factual posture here, however, the inquiry is limited to a partial or qualified termination, a divorce a mensa et thoro, under which the parties are legally separated and forbidden to live or cohabit together but with the marriage bond not being dissolved.[6] By a decree of the Circuit Court of Baltimore City Dorothy Joyce (appellant) was divorced a mensa et thoro from Osler Collinson Joyce (appellee).[7] The decree contained provisions concerning certain personal property of the parties. A gun collection was declared to be the sole and separate property of appellee and awarded to him. A determination of the ownership of the contents of their household and a book collection was reserved for further ruling by the court. A special master was appointed to determine the ownership of that property and report his findings and conclusions to the court. He was invested with the power to decide on the competency, materiality and relevancy of any question proposed by either party

---

by petition to a court of equity. If the court shall be satisfied that the husband is supplying his wife with all necessaries to which she is entitled, or with funds reasonably sufficient to purchase them, having regard to her station and the means of the husband, and that his credit is being abused, it shall pass an appropriate order. Notice of the passage of such order given by the husband in writing to any person shall be sufficient to prevent such person from recovering from the husband for any work thereafter done or for any goods, wares or merchandise thereafter furnished to the wife or on her order. Code, Art. 16, §§ 40-42.

6. As distinguished from a total termination of the marital status, a divorce a vinculo matrimonii, dissolving the marriage tie, and releasing the parties wholly from their matrimonial obligations.

7. Below appellant and appellee were complainant and respondent respectively in an amended bill of complaint and respondent and complainant respectively in a cross bill and supplemental cross bill of complaint. The cross bill and supplemental cross bill of complaint were dismissed by the court.

or evidence elicited subject to final ruling by the court upon exceptions to the report of the Special Master. See *Rules of the Supreme Bench of Baltimore City,* Rule 571 D. The Special Master visited the home of Dr. and Mrs. Joyce and prepared a complete listing of the household furniture, furnishings and book collection. He conducted evidentiary hearings to determine the ownership of the goods. There was evidence that many of the chattels were given appellee by his mother "as a regular procedure wherein she gave items of furniture and furnishings to each of her children." [8] As to books and plates on Ornithology and Natural History Costume, Reference Works and Bibliography, Water and Game Birds and Birds of Great Britain, apparently the book collection referred to in the decree, there was evidence by way of a letter from the seller in which it was stated that they were purchased by appellee. Appellant testified that many of the gifts from appellee's mother were to them jointly or to their children and, as to items purchased, her testimony was generally to the effect that they were purchased as husband and wife, the "assumption being that anything purchased was purchased or were given to the parties as husband and wife; and, therefore are held as husband and wife." She testified that 28 household items listed by the Master and characterized by him as "not items of any particular consequence," belonged to her. The Master concluded:

> "The facts indicate that the ownership of the personal property involved between these contesting parties was primarily obtained by gift from Dr. Joyce's Mother or by purchase by Dr. Joyce. The facts indicate that Mrs. Joyce was

8. The evidence was from testimony of appellee, substantiated by testimony of his brother and by the Last Will and Testament of his mother. The Master observed: "The Cross-Examination of Dr. Joyce was primarily several questions, and they were: Where did you buy it?; When did you buy it?; and How much did you pay for it?; none of which adds any status to the claim of Mrs. Joyce as to items which were obtained from Dr. Joyce's mother or items which Dr. Joyce personally purchased."

> never gainfully employed and that she carried on her duties as a wife and mother at their Joyce Lane property for the period of the marriage."

The Master submitted a division of the property. List No. 1 designated the chattels which had been found to be the property of appellee and set them over to him. List No. 2 designated the chattels which had been found to be the property of appellant and set them over to her. List No. 3 designated the chattels found to have been jointly owned by appellant and appellee. The court by its order [9] awarded the chattels in list No. 1 to appellee and the chattels in list No. 2 to appellant. It declared the chattels in list No. 3 to be held by appellee and appellant as tenants by the entireties.[10]

The court had statutory power to hear and determine the ownership of the chattels personal. Code, Art. 16, § 29, reads:

> "Whenever a court shall grant a divorce a mensa et thoro or a divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property [except chattels real] held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the court may deem proper."

This statute does no more than to empower the court, in

---

9. The order stated that exceptions had been taken to the report of the Special Master and disposed of. Appellee urges on appeal that the exceptions were not taken as required by Supreme Bench Rule 574. For the purpose of decision we assume that they were in compliance with the Rule.

10. Appellant and appellee agree that the lower court had no power to divide chattels held as tenants by the entirety upon a divorce a mensa et thoro as the marital relation was not dissolved. See *Hokamp v. Hagaman*, 36 Md. 511; *Keen v. Keen*, 191 Md. 31.

decreeing a divorce, to determine the ownership of the personal property of the parties and to apportion the property accordingly. *Lopez v. Lopez*, 206 Md. 509. It confers no power to transfer the property of either spouse to the other, or otherwise to dispose of it. And it is firmly established that a court of equity has no power, unless conferred by the legislature, to transfer the property of either spouse to the other, or otherwise to dispose of it. There is no statute authorizing the court to adjust the property rights of the parties in a suit for divorce, except to award to the wife such property or estate as she had when married. *Hall v. Hall*, 180 Md. 353. See *Brucker v. Benson*, 209 Md. 247; *Lickle v. Boone*, 187 Md. 579; *Gunter v. Gunter*, 187 Md. 228; *Elko v. Elko*, 187 Md. 161; *Dougherty v. Dougherty*, 187 Md. 21. The statute referred to in *Hall* is codified as Code, Art. 16, § 25. It provides in relevant part:

> "* * * [I]n all cases where a divorce [a mensa et thoro] is decreed, the court passing the same shall have full power to award to the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the court may deem reasonable * * *." [11]

The lower court did not err in accepting the findings or conclusions of fact appearing in the report of the Special Master. They were not clearly wrong when due regard is given to the opportunity of the Special Master to judge the credibility of the witnesses. Supreme Bench Rule 574 (a).

---

11. Under this statute the estate of the wife shall be awarded her only when a divorce has been decreed. *Hood v. Hood*, 138 Md. 355; *Murray v. Murray*, 134 Md. 653. But the power of the court to make the award does not depend on the cause of the divorce, or the conduct of the husband. The law was not intended as a punishment to the husband, but to protect the wife for the future. *Tyson v. Tyson*, 54 Md. 35.

Since the finding that the chattels awarded to appellee were acquired by him by gift to him or purchase by him was proper, the only question is whether they were his separate property, free and clear of any property in appellant. If they were, the award was proper, for then the court did no more than it was empowered to do under Art. 16, § 29, namely, apportion the property to the party owning it.

We observe first that the evidence before the Master did not establish that appellee had made a gift to appellant of the chattels in list No.1, nor does it show that he transferred them to her in any manner. Appellant contends, however, that household goods and furnishings, within which category she places the chattels in list No.1, when used in the marital home are held by the entireties even though contributed or paid for by the husband. She relies strongly on *DuPont v. DuPont,* 33 Del. Ch. 571, 98 A. 2d 493 (1953) and *Plohn v. Plohn,* 135 N.Y.S.2d 135 (1954), modified on other grounds, 149 N.Y.S.2d 32 as holding in effect that "where husband and wife jointly use and possess personal property a presumption of joint ownership is proper. This applies especially to household furnishings, which are often purchased from time to time throughout the marriage without specifying whose funds are used and which spouse holds the title to each particular furnishing." 102 U. Pa. L. Rev. 258, 260. This is not the law in Maryland. In *Newmeyer v. Newmeyer,* 216 Md. 431 the chancellor awarded the marital bed to the wife because the store from which it was bought made out the invoice in her name, she having given the order. The husband produced cancelled checks showing that the entire purchase price had been paid by him.[12] The Court thought that the husband proved the bed was his and that it should be given to him. It also found that four debentures with a face value of $500 each should be divided,

---

12. The Court observed that the husband wanted the bed because it was designed and built especially to accommodate his large size and the mattress was custom made to support his ailing back. The wife's desire for the bed would seem to be entirely sentimental.

one to the wife and three to the husband because she contributed $500 of the purchase price and he contributed $1500. It said that an automobile was the property of the wife because on the facts the husband gave her the equity in it and a property right equal to the amount of money borrowed to buy it. At 435-436. See *Gebhard v. Gebhard,* 253 Md. 125, 128-130; *Jones v. Hamilton,* 211 Md. 371; *Brewster v. Brewster,* 207 Md. 193. In Maryland, in the absence of proof sufficient to show that the owner divested himself of his property in them, chattels personal acquired by gift belong to the donee and chattels personal acquired by purchase belong to the one who paid for them, whether or not they are used in the marital home.[13] As the Court said in *Lopez v. Lopez, supra,* at 518:

> "[T]he court obviously cannot make an adjustment of property rights where the wife never contributed anything toward the purchase of the husband's property."

Here the award of the chattels designated by list No.1 to appellee was proper because they were his property, having been acquired by him as an outright gift or purchased with his funds.

*Order of 16 April 1970 of the circuit court of Baltimore City affirmed; costs to be paid by appellee.*

---

13. So in *Myers v. King,* 42 Md. 65 where the husband advanced money for purchase of articles of household furniture, and was afterwards reimbursed by the wife out of her separate property, in accordance with an agreement made prior to the purchase, the property so purchased belonged to the wife.