CONNIE H. WOODALL *v*. THOMAS B. WOODALL, SR.

[No. 630, September Term, 1971.]

*Decided August 7, 1972.*

18

The cause was argued before MORTON, MOYLAN and CARTER, JJ.

*Joseph E. Roesser,* with whom were *Arthur V. Butler* and *Butler & Roesser* on the brief, for appellant.

*Vincent L. Gingerich* for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Connie H. Woodall, was awarded a divorce a vinculo matrimonii from the appellee, Thomas B. Woodall, Sr., by Judge Samuel J. DeBlasis, sitting in the Circuit Court for Prince George's County. The decree also provided that custody of the three minor children of the parties be awarded to the appellant, that the appellee pay to the appellant the sum of $165 per week for the "support and maintenance" of herself and the two youngest children, and that the appellee pay to the wife's attorneys the sum of $2500 for legal services and the sum of $500 to the detective agency for investigative services. The decree further declared that the parties were joint owners of the household furniture and effects except for an electric organ and guns which were determined to be the property of the husband, that 1622 shares of stock of Quality Courts Motels, Inc. registered in the joint names of the parties were jointly owned by them, and that all stock registered in the name of the husband was his individual property. The wife appealed from the decree contending (1) that the order declaring the stock registered in the name of her hus-

band to be his individual property was in error, (2) that the chancellor erred in failing to separate the amount of support awarded her from that awarded to her children and that both awards were inadequate, (3) that the amount required to be paid by the husband toward the charges for legal services rendered the wife was inadequate, and (4) that the amount required to be paid by the husband toward the expense of investigative services rendered the wife in this suit was inadequate.

## FACTS

The evidence showed that the parties were married in 1950. For a time in 1966 they separated because of the husband's alleged adultery but reconciled in July 1966. Thereafter they continued to live together until August 1970 when the husband left the home and took up residence in an apartment in Washington, D.C. where he established an adulterous relationship with another woman. At the time of trial in September 1971 the wife was 45 years of age and the husband was 41. There were three children born of the marriage, namely, Thomas Jr., Lynn, and Tracey, whose present ages are 18, 15, and 10 respectively. Thomas is presently self supporting.

The husband was Secretary-Treasurer of a family-owned corporation, T. M. Woodall, Inc., which operated a plastering contract business. His annual income for the year 1970 as reflected by his federal income tax return showed an adjusted gross income of $20,244 before taxes. In his brief he states that his gross income before taxes from all sources in 1970 was $30,900. There is also a wide discrepancy in the husband's net worth figures. In his routine financial statement to the Suburban Trust Company dated December 10, 1970, he showed his net worth to be $360,000. An unaudited financial statement prepared at his instance by certified public accountants dated August 11, 1971 showed his net worth as $242,000. He explained this decline in his financial worth by pointing out that his stock holdings in Quality Courts Motels,

Inc. had decreased in value. The wife testified that she was employed as a registered nurse on an average of three days a week at The National Institute of Health. Her earnings at present are $111.30 for a three day week or approximately $6,000 annually. If she works five days a week, her earnings amount to $185 per week or approximately $9,300 per year. She presently works part-time in order to spend more time with her youngest son who is residing with her. The wife's statement as to her needs showed the sum of $1238.50 a month for the support and maintenance of herself and her children without any apportionment of the total figure.

In respect to the wife's financial contributions to the purchase of stock that is now in the husband's name, the evidence showed the following: Prior to the birth of their first child in 1953 all of the earnings of both the husband and wife went into a joint bank account primarily for the operation of the household and their joint benefit. In February 1968 she began working on a full time basis for The National Institute of Health at her husband's suggestion because he was unable to finance the household. Her earnings at that time amounted to about $7,000 per annum. She gave half of these earnings to her husband and the other half she spent on food for the family and clothes for herself and the boys. After June 1969 she discontinued any contributions to her husband personally or to any joint account. She further testified that up until the separation in August 1970 she had signed many notes jointly with her husband. The wife testified that she did not know for what purposes the husband used the money he obtained by these notes but that about 1960 he had told her he was using it to buy stock. The husband testified that all monies realized from loans secured on the joint signatures of him and his wife went directly into his individual bank account as did any monies given him directly by his wife and that all stock in his individual name was paid for by checks drawn against this account. He further stated that his wife had never paid anything on the joint notes and

that she had no contingent liability thereon to Suburban Trust Company at the time of trial. He also testified that he had approximately 27,000 shares of Quality Courts Motels, Inc. stock in his individual name and that there were 1622 shares of this stock in the joint names of him and his wife. The husband further explained that the 27,000 shares in his name represented stock issued to him by Quality Courts Motels, Inc. in exchange for his stock holdings in three corporations that had merged with "Quality." However, he pointed out that "Quality" stock is presently in the status of unregistered stock which cannot be sold until the Security and Exchange Commission approves the merger.

The same accounting firm that submitted the financial statement of the husband also submitted a similar financial statement of T. M. Woodall, Inc. This statement was also unaudited but was represented by the appellee to be correct. It showed a net worth of the company as of December 31, 1970 of $193,000. However, the husband in his financial statement to the Baltimore Federal Savings and Loan Association in April 1971 listed his one-fifth interest in the company (100 shares) as having a value of $85,000 thus indicating the net worth of the company (500 shares) to be $425,000 at that time.

The bill submitted by counsel for the wife claimed the sum of $5,047.56. It was composed of time spent in preparation for trial at the rate of $40 per hour, one trial day at the rate of $375, and the cost of reproducing financial records. The bill submitted by the detective agency for investigative services amounted to $2,254.18. The wife had previously paid the sum of $1310 on account of the services of counsel and the detective agency. There was no evidence to show how this payment was apportioned. A member of the law firm that represented the wife in the preparation and trial of the instant case testified that in his opinion the charges in both bills were fair and reasonable and in accordance with the usual charges for similar services in the community.

After the decree was signed the chancellor passed an

order requiring the husband to pay a fee of $375 to the wife's counsel for representing her in this appeal. The fee was made subject to modification by this Court.

## I

The wife's first contention that she is legally entitled to an interest in the stock registered in her husband's name is without merit. Her contention is based on the following grounds: (1) that she co-signed the notes upon which her husband borrowed the money to buy the stock, (2) that she gave her husband money from her personal earnings from time to time, and (3) that she relieved her husband of some of his legal obligations to maintain the home by contributing to this expense from her personal earnings.

Md. Code, Art. 16, § 29 provides in substance that whenever a court shall grant a divorce, it shall have the power to determine all questions between the parties in connection with the ownership of personal property and to make a division of such property between them. This statute, passed in 1947, was discussed and construed in *Lopez v. Lopez*, 206 Md. 509. The Court of Appeals there pointed out the general rule that in divorce proceedings a court of equity has no power, unless conferred by statute, to transfer the property of either spouse to the other. In that case, the 1947 act was construed as going "no further than to empower a court of equity, in decreeing a divorce, to determine the ownership of the personal property of the parties and to apportion the property accordingly." At page 517. The Court went on to say, at page 518, that "the court obviously cannot make an adjustment of property rights where the wife never contributed anything toward the purchase of the husband's property."

The same statute was further construed by the Court of Appeals in *Gebhard v. Gebhard*, 253 Md. 125, which involved, as does the present case, title to securities registered in the name of the husband. The trial judge in *Gebhard* had found that the wife was a complete home-

maker, doing all the housework and, in addition, kept books and handled the home office of the husband. He felt that the securities were accumulated in part from income to which the wife contributed as homemaker, hostess, and secretary, and held that she was the owner of one third of the stocks. The Court of Appeals reversed this holding, pointing out that the wife brought no property to the marriage, had not been employed during the marriage, except in helping the husband in his business, and that she did not claim that she had made any cash contribution toward the purchase of the stocks. After discussing the statute, and reviewing its earlier holding in *Lopez v. Lopez, supra,* the Court of Appeals said, at page 130:

> "On the evidence of this case there is no basis for a conclusion other than that title to these securities was in the registered owner, the husband. See *Brewster v. Brewster,* 207 Md. 193, 202, 114 A. 2d 53 (1955) and *Newmeyer v. Newmeyer,* 216 Md. 431, 435, 140 A. 2d 892 (1958). There was not the slightest evidence of ownership by the wife, other than the community property theory urged by her, upon which the chancellor could determine ownership or require a division under Art. 16, § 29. There was no evidence upon which an award could be made under § 25, since the wife brought no property or estate to the marriage. No authority exists for a division between parties as was here done because of the work efforts of the parties. There being no legal basis upon which the chancellor could award a part of the securities to the wife, his action was clearly erroneous."

In *Joyce v. Joyce,* 10 Md. App. 516, this Court affirmed a rather complicated apportionment of personal property under Art. 16, § 29, made by the trial court upon its determinations of ownership, including the division

of some debentures on the basis of the amounts each had contributed to the purchase price.

Since it is clear from *Gebhard* that the work efforts of the parties cannot authorize a division of property between them, the wife's payment in this case of certain household expenses cannot be converted into ownership of securities registered in the husband's name. Nor can her exposure to liability on notes evidencing loans to the husband be so converted, in the absence of proof that the proceeds of such loans were used to buy the securities and that she contributed to repayment of the loans.

However, we take the statement expressed in the negative by the Court of Appeals in *Lopez v. Lopez, supra,* to be equally applicable in the affirmative; that a court *can* make an adjustment of property rights where the wife *did* contribute something toward the purchase of the husband's property. Thus the ownership to be determined may be equitable as well as legal ownership, and that equitable ownership may be established, *pro tanto,* by showing the contribution of funds used in the acquisition of the property.

The burden of proving such ownership is upon the spouse who asserts the affirmative of the issue. Our examination of the evidence in this case fails to show that any funds which the wife turned over to the husband were used to pay for the securities in question. We conclude therefore that the chancellor was not in error in declaring the husband to be the sole owner of the stock registered in his name and that the wife had no ownership therein.

## II

In her second contention the appellant complains (1) that the chancellor committed prejudicial error by failing to separate her support from that of her children in his award, and (2) that the amount of the award was inadequate. In respect to the appellant's complaint (1) we hold that she is entitled to a separation of her award of alimony from the support ordered to be paid for her

children. Alimony has been defined by the Court of Appeals in *Winkel v. Winkel,* 178 Md. 489 at 497-498 as follows:

> "Alimony, whether temporary or permanent, is not a debt. * * * Generally speaking it is a periodical allowance during the joint lives of the spouses [or until remarriage] for the wife's support and maintenance when they live separate and apart or she is divorced from her husband. * * *"

See also *Safe Deposit & Trust Company v. Robertson,* 192 Md. 653. In *Bart v. Bart,* 182 Md. 477 the Court said at page 479:

> "* * * It is true that the determination of what is or what is not alimony does not depend on what it is called (*Emerson v. Emerson,* 120 Md. 584, 87 A. 1033), * * *."

Under the definition in *Winkel* and the holding in *Bart,* we conclude that the portion of the award "for the support and maintenance of herself and the two minor children of the parties" which the chancellor intended as support and maintenance for the wife was in fact alimony regardless of the term the chancellor used to describe it.

Md. Code, Art. 16, § 5 provides in substance that the court shall not award alimony or counsel fees "unless it shall appear from the evidence that the wife's income is insufficient to care for her needs." This statute has been interpreted by this Court, speaking through Chief Judge Murphy, in *Quinn v. Quinn,* 11 Md. App. 638. At page 643 the Court said:

> "Maryland Code, Article 16, Section 5, directs that the court not award alimony 'unless it shall appear from the evidence that the wife's income is insufficient to care for her needs.' It is thus altogether plain that alimony is not

to be awarded as a punitive measure. *Bowis v. Bowis*, 259 Md. 41. Rather, it is an allowance to the wife in recognition of the husband's common law liability to support her; * * *. It was held in *Waters v. Waters*, 191 Md. 436, that in determining an award of alimony and whether, under the statute, the wife's income 'is insufficient to care for her needs,' the court should consider *the husband's wealth and earning capacity*, the assets and income of the wife, the station in life of the parties, their age, physical condition, and ability to work, the length of time the parties lived together, the circumstances leading up to the divorce, and the fault which destroyed the home. To the same effect, see *Burton v. Burton*, 253 Md. 233; *Newmeyer v. Newmeyer*, 216 Md. 431. * * *" (emphasis added.)

In dealing with the criteria to be employed in arriving at a proper amount to be awarded for the support and maintenance of children, the Court of Appeals in *Chalkley v. Chalkley*, 240 Md. 743 said at page 744:

"* * * Ordinarily, the awarding of * * * support [for children] should be based on the earning capacity and financial worth of the * * * father and the circumstances of the * * * children as of the time of the award. * * *"

See also *Bowis v. Bowis, supra; Kapneck v. Kapneck*, 235 Md. 367, 368.

Under the criteria set forth in *Quinn* and *Chalkley* it seems clear that even though many of the *general principles* employed in the determination of the amount of an alimony award are likewise employed in fixing the amount of child support, the factors to be considered in each are not exactly the same. For instance, the question of whether "the wife's income is insufficient to care for her needs" has a material effect upon the amount of alimony to which she is entitled but no *direct* effect upon the determination of the amount of child support re-

quired to be paid by the father. The duration of alimony and child support are likewise not parallel. Child support continues until a child becomes 21 years of age, is emancipated or becomes self supporting while alimony continues until one of the parties dies or the wife remarries. Also the significance of alimony and child support from an income tax standpoint is not the same. The wife is required to pay income taxes on alimony paid her but not on payments made to her for child support. The husband is entitled to claim alimony payments as an expense deduction on his income tax returns but he may not claim child support as a deduction. However, he is entitled to have his contributions for child support considered in determining whether they amount to more than fifty per cent of the cost of maintaining the child and therefore entitle him to claim the child as an exemption. For all of these reasons we think the amount awarded as alimony should be separated from the amount awarded for child support. We shall therefore reverse that part of the decree which awards $165 collectively for the support and maintenance of the wife and two dependent children of the parties and remand it to the lower court for further proceedings. Under this ruling, we do not reach the appellant's complaint (2) that the amount awarded for alimony and child support was inadequate.

However, in the conduct of further proceedings, we call the chancellor's attention to the various factors required to be considered in determining alimony and child support as set forth in *Quinn, supra* and *Chalkley, supra* respectively and in particular to the requirement that the net worth and earning capacity of the husband and father be considered. The evidence showed there were wide discrepancies in the figures representing the net worth and earnings of the husband without any finding having been made in respect to the correctness thereof. It is therefore suggested that upon re-hearing further

evidence be adduced to resolve these discrepancies and that specific findings be made by the chancellor as to the fair market value of the husband's assets and his net worth as well as his earnings at the time of the re-hearing trial. It is also suggested that the wife's statement of her needs be amended to reflect her needs separate and distinct from the needs of her two dependent children and that separate findings be made in regard to each of these items.

## III

The appellant further contends that the allowance for counsel fees was inadequate. The criteria for determining the amount of counsel fees to be awarded in cases where "the wife's income is insufficient to care for her needs" (Art. 16, § 5) is set forth by the Court of Appeals in *Waters v. Waters, supra* at page 441:

> "* * * [C]ounsel fees should be awarded according 'to the ordinary factors of labor, skill, time, and benefit.' The amount of the fee also cannot be wholly disassociated from the financial resources of the party charged. * * *"

The financial resources of the party charged in the instant case are the net worth and earning capacity of the husband at the time of trial. As previously stated there were substantial discrepancies in the amounts claimed for the husband's net worth and earning capacity at the time of trial which were not resolved by the lower court. These items are material factors in arriving at the amount to be allowed as counsel fees and charged to the husband. Therefore that part of the decree which awards counsel fees, including the allowance for legal services on appeal, will also be reversed and remanded for further proceedings. In the conduct of further proceedings in respect to counsel fees, we suggest the same procedure be employed to determine the net worth and earnings of the husband as that recommended in regard to the re-hearing on the question of alimony and child support.

30

The appellant also contends that the allowance of suit money was inadequate. In speaking of the wife's right to require her husband to pay "suit money" when her income is insufficient to care for her needs, the Court of Appeals in *Rubin v. Rubin*, 233 Md. 118 said at page 126:

> "* * * The principle of the more persuasive decisions * * * (particularly in Maryland and New York) indicate that the expense of services rendered before suit is instituted, * * *, may be included in suit money allowable to a wife where such expenses are reasonable and necessary to bringing or carrying on the suit."

Under the rationale of *Rubin* it seems clear that those expenses which are reasonably necessary to the institution or carrying on of a divorce suit including reasonable investigative expenses are payable by the husband to the same extent as counsel fees under Md. Code, Art. 16, § 5. For the same reasons assigned for reversing that part of the decree awarding counsel fees, that is, the failure of the lower court to determine the financial worth and earning capacity of the husband, we shall likewise reverse that part of the decree which ordered the husband to pay an amount for investigative expenses incurred by the wife and remand it for further proceedings. In the conduct of further proceedings in this matter, it is likewise suggested that the same procedure be employed as is herein recommended for the rehearing in regard to counsel fees.

> *Parts of the decree awarding support and maintenance for the wife and two children, counsel fees, and suit money reversed and remanded for further proceedings in accordance with this opinion.*
> *Other parts of the decree affirmed.*
> *Appellee to pay the costs.*