STANLEY SODY *v.* PHYLLIS L. SODY

[No. 1217, September Term, 1975.]

*Decided September 16, 1976.*

The cause was argued before MOYLAN, MOORE and MASON, JJ.

*Frank B. Cahn, II,* for appellant.

*Michael G. Hendler* and *Bennett Gilbert Gaines* for appellee.

MOORE, J., delivered the opinion of the Court.

This is an appeal in a matrimonial action wherein the appellant husband challenges certain of the chancellor's findings and orders relating to property, alimony and counsel fees. Perhaps the most significant issue arises out of the court's determination that a former joint bank account of the parties was the sole property of the wife.

The appellee, Phyllis L. Sody, was awarded a divorce *a vinculo matrimonii* in the Circuit Court for Baltimore County (Haile, J.) in a decree which also granted custody of a

minor child to the appellee but reserved for further hearing all matters relating to child support, alimony, counsel fees and division of jointly owned personal property. After further evidentiary hearings, the court (Brannan, J.) made, *inter alia*, the following orders which are the subjects of this appeal:

1) That the proceeds withdrawn by appellee from the joint savings account of the parties prior to the filing of appellee's bill of complaint were the sole and separate property of appellee;

2) That the sum of $5 per week was to be paid as alimony by appellant to appellee to continue during the lives of the parties or until she should remarry;

3) That the sum of $2,500 be paid as additional counsel fee to counsel for the appellee to be divided equally between the parties;

4) That the sum of $350 be paid by appellant to appellee, representing one-half of a private investigator's fee paid by her;

5) That the sum of $836.48 be paid by appellant for automobile rental payments incurred by appellee from August 12, 1975, to October 21, 1975, the date of the hearing, when appellant disclosed the location of a 1973 Mercury Cougar automobile primarily used by appellee, but secreted by appellant.[1]

The record discloses that the parties owned a residence in Baltimore County, as tenants by the entirety. It was valued by the wife in the sum of $45,000. They continued to live in it, without cohabitation, after the filing of the bill of complaint by the wife on June 26, 1974; the wife moved out on April 1, 1975.[2]

With respect to his financial condition, appellant testified

---

1. The parties jointly owned two Mercury Cougar automobiles, 1973 and 1974 models. The wife drove the 1973 car.

2. We are informed that, from the evidence adduced at the proceedings before Judge Haile, the husband was living in the house only on weekends, and was working during the week in Chicago.

that he had been unemployed since February, 1975, drawing unemployment compensation in the amount of $99.00 per week. These payments had terminated by the time of trial. He had previously been employed by Needlecraft Corporation of America as national sales manager, earning $27,500 per annum. He testified that he lost his job when the company was purchased by another corporation. Thereafter, he attempted several unsuccessful business ventures, including a loan company and a men's cologne distributorship. At the time of trial, his only source of income was $384 per month representing installment payments from the sale of a corporation, Magnet Enterprises, which had owned a downtown Baltimore bar, operated by Mr. Sody. The record reveals that the parties jointly held 75% of the stock of Magnet Enterprises prior to its sale, and that the remaining interest was owned by appellant's mother.[3] Against these limited assets, appellant testified to monthly living expenses of $552.

According to appellee's testimony, she was employed as a real estate salesperson earning commissions of approximately $8500 in 1974 and $7500 in 1975. Previously, she worked part time for five years for the City of Baltimore. Mrs. Sody's financial statement showed requirements of $1193.82 a month, without apportionment, for the support and maintenance of herself and the minor female child, Kelly, age 14. Included in this assessment of needs was a $295 monthly payment under a mortgage of $24,000 on her residence, a townhouse which she had purchased for $50,000. (The $26,000 down payment was borrowed from her mother, to be repaid when convenient.)

With respect to the joint bank account of the parties, the appellee testified as follows on direct examination:

"Q Now, when you and your now ex-husband first had a parting of the ways did you — was there a joint bank account?

A Yes.

___

3. On appeal the wife makes no claim to the proceeds of the sale of Magnet Enterprises based upon her joint stock ownership.

Q Joint savings account?

A Yes, there was.

Q Where was that account located?

A It was located in Baltimore Federal Savings and Loan.

Q Baltimore Federal Savings and Loan?

A Yes.

Q And did you withdraw the money from that account?

A I did.

Q And where did you deposit that money?

A In Yorkridge Federal.

Q And in whose name did you deposit it, that money?

A My name.

Q You have that bank book with you?

A Yes, I do. It is in that envelope.

Q Now, I show you a savings account book, number 10546-5, Yorkridge Federal Savings and Loan Association, titled in the name of Phyllis Sody, and trust for self and Kelly Sody, joint owners, subject to the order of Phyllis Sody. Balance at death of either to belong to the survivor. And I ask you if you can identify this bank book?

A Yes, that's mine.

Q Alright. Now, the first deposit in this bank book is on June 12, 1974? [4]

A Right.

Q In the amount of $9,423.91. And additional deposit on June 13, 1974, the day after, of $150.00, starting out there with a full balance of $9,573.91, is that correct?

A That's correct.

Q Now, you say this money came from a joint

---

4. As previously noted, the bill of complaint was filed on June 26, 1974.

account in the name of yourself and your husband from Baltimore Federal?

A That's correct.

Q Where did that money come from?

A It was money that we had saved.

Q Money that you had saved?

A Right.

Q And any other specific sources in addition to money that you had saved?

A Well, there was some money from Magnet Enterprises that was put into this bank account."

Appellee later testified that $2,300 of the total amount of the joint account represented the proceeds of a check drawn on the Magnet Enterprises checking account and deposited by her in the joint account at the request of appellant.

Between the time the old account was closed out and the date of the hearings below, appellee had made withdrawals from the new account. These included:

$300.00 — stereo set for son's birthday
835.00 — to repair or replace an air conditioner compressor
250.00 — contact lenses for daughter, Kelly
1165.04 — legal fees
129.00 — car payment
100.00 — living expenses
700.00 — private investigator fees

By the time of trial, the balance in the account was $4,093.04.[5]

On cross-examination, Mrs. Sody gave the following testimony concerning her interest and that of Mr. Sody in the joint account:

"Q Oh, well, are you saying then that half the bank account is your husband's, or all of it is your husband's, or what?

5. Subtracting the above enumerated withdrawals from the amount originally deposited, leaves an amount in excess of the $4,093.04 figure. This difference is unexplained by the record.

A Well —

MR. HENDLER [Appellee's counsel]: Objection.

THE COURT: Overruled.

A Half of the bank account was supposedly his.

MR. CAHN [Appellant's counsel]: Half of the bank account was supposedly his?

A That's correct.

Q (By Mr. Cahn) But, you took it all?

A That's correct."

When Mr. Sody took the stand, his testimony concerning the account was limited to the following:

"Q Alright. Mr. Sody, there was some testimony about a bank account at Baltimore Federal Savings and Loan that was a joint account, you and your wife, is that correct?

A That's correct.

Q That was monies put in from your earnings?

A That's correct.

Q Some monies went in from Magnet Enterprises, is that correct? $2300?

A $2300, that's right.

Q And have you ever gotten any money out of that joint account? In the last year and a half?

A I haven't seen a penny of it."

As for the car rental of $836.48 ordered to be reimbursed by Mr. Sody, the wife testified that on August 12, 1975, she reported to her insurance company that the 1973 Mercury Cougar was missing from the front of her house. The insurer permitted her rental fees for a 30-day period before reimbursing her for the loss. Shortly before the expiration of the 30 days, however, she learned, through her attorney, that the car had not been stolen, but that it had been taken by the appellant without his wife's knowledge or permission. The insurance company then refused to pay for the car rental. Mrs. Sody testified that she had to rent a car and that the total expense was $836.48.

We will consider appellant's assertions of error in the order presented.

## I

Did the lower court properly declare the proceeds of the joint savings account to be the sole and separate property of the wife?

The Maryland Code (1974), Courts and Judicial Proceedings, § 3-603 (b) provides:

> *Determination or division of personal property.* — A court granting a limited or absolute divorce may determine the ownership of personal property, other than chattels real, held, possessed, or claimed by a party to the divorce proceedings, and in accordance with that determination may:
>
> (1) Make a division of personal property between the parties;
>
> (2) Order a sale of personal property and a division of proceeds; or
>
> (3) Make any other disposition of personal property it deems proper. (formerly Code (1957), Art. 16, § 29).

It is clear that a court of equity, sitting as a divorce court, does not have discretion to award the property of one spouse to the other. *Abell v. Abell,* 12 Md. App. 99, 103, 277 A. 2d 629 (1971). As stated in *Joyce v. Joyce,* 10 Md. App. 516, 522-23, 276 A. 2d 692 (1970):

> "This statute does no more than to empower the court, in decreeing a divorce, to determine the ownership of the personal property of the parties and to apportion the property accordingly. *Lopez v. Lopez,* 206 Md. 509. It confers no power to transfer the property of either spouse to the other, or otherwise to dispose of it. And it is firmly established that a court of equity has no power, unless conferred by the legislature, to transfer the property of either spouse to the other, or otherwise to dispose of it. . . . *Hall v. Hall,* 180 Md. 353. See

*Brucker v. Bensen,* 209 Md. 247; *Lickle v. Boone,* 187 Md. 579; *Gunter v. Gunter,* 187 Md. 228; *Elko v. Elko,* 187 Md. 161; *Dougherty v. Dougherty,* 187 Md. 21."

In *Abell v. Abell, supra,* this Court reversed the chancellor's unequal distribution of personal property between husband and wife once a finding had been made that the property was jointly owned. Speaking for the Court, Judge Morton wrote, *"[t]hus having found that the personal property was owned equally by the parties, the Chancellor was powerless to do anything more under the terms of [Art. 16] § 29 [now Cts. & Jud. Pro., § 3-603 (b)] than to make an equal division between the parties of the jointly owned property. . . ."* 12 Md. App. at 104. (Emphasis added.) *See Gebhard v. Gebhard,* 253 Md. 125, 252 A. 2d 171 (1969).

Appellant argues that the chancellor erred in awarding the proceeds of the Yorkridge Federal Savings & Loan Association savings account to his wife. It is his position that it was the duty of the chancellor to divide the account equally, "if not at the time of the removal of the funds by the appellee, at least at the time that the matter was heard in court."

The burden of proving an interest in the property is upon the spouse who asserts the affirmative of the issue. *Woodall v. Woodall,* 16 Md. App. 17, 25, 293 A. 2d 839 (1972). While the savings and loan association's records and the original bank book were not offered in evidence, there was no issue between the parties that the savings account was joint. Appellee herself testified that the money belonged to both parties in equal shares and was derived from mutual savings. The chancellor, however, apparently felt that since each joint owner had the legal authority to withdraw the entire amount, once the account was closed out by the wife, the husband's interest was divested. In his opinion from the bench, he stated, in part:

"And while there seems to be rather no Maryland case I can find on point, and while it seems at times very inequitable, it was a joint account subject to

the withdrawal of either one, there was no notice given to the bank of any problem, Mrs. Sody withdrew the funds and has used what she has expended to her family's use and not to her own personal use. So I find that Mrs. Sody was entitled to withdraw the funds from the joint account, and she is entitled to keep the remaining balance of the proceeds."

Because the savings account was joint, the court was unquestionably correct in stating that Mrs. Sody was entitled to withdraw the funds. Such a right is conferred by statute. Maryland Code (1957, 1976 Repl. Vol.), Art. 11, § 102. A bank is thus protected from any claim by one joint account owner when the other draws upon the account in whole or in part. *See also* Code (1957, 1973 Repl. Vol.), Art. 23, § 145.

The right to withdraw, however, is not dispositive of the husband's claim that he is entitled to a one-half share in, at least, the balance on hand. *Jones v. Hamilton*, 211 Md. 371, 127 A. 2d 519 (1956). In the case cited, Hammond, J. (later Chief Judge) presents a discursive analysis of Maryland case law pertaining to conflicting claims of co-owners, and of surviving owners of joint accounts where the co-owners are deceased.

In *Jones*, the sum of $10,000 had been deposited in a savings and loan association joint account in the names of a husband and wife, Sammie C. Elam and Sara F. Elam, "as joint tenants, with the right of survivorship, and not as tenants in common." A few months after the account was opened, the husband notified the savings and loan association that none of the funds should be released to his wife because divorce proceedings were pending, and that the account should be kept intact until the outcome of the litigation. Thereafter, the wife presented the account book and made demand for the full sum on deposit. The bank refused. Within a few days, the wife died, intestate, and the husband made demand for payment of the funds as the surviving joint owner. The bank thereupon filed a bill of interpleader. A short time thereafter, the husband was shot

and killed. The trial court was thus presented with the conflicting claims of the personal representatives of each. The husband's administratrix pressed the claim earlier asserted by him that he took by survivorship. The administratrix of the wife claimed the money on the ground that her intestate had duly presented the passbook and was entitled by that act to payment.

The chancellor held that the possessor of the passbook was entitled to draw the money upon presentation of the book, that payment had been wrongfully refused, and that the conduct of the savings and loan association "created a chose in action in favor of Mrs. Elam against the bank." The decree awarded the fund to the wife's estate.

The Court of Appeals remanded the cause, without affirmance or reversal, for further proceedings. Judge Hammond's opinion makes clear that the reason for the remand was that the record was insufficient to make a determination of the fundamental issue involved namely: "The ownership of the fund and the actual intention of the owner or owners in following the course they did with regard to the creation of the account and the deposit of money." 211 Md. at 381. Affirming the right of either to draw the money on demand, the Court pointed out that, as holder of the book, she was the owner of a chose in action as much before the demand as afterwards. The opinion then states:

> "In both cases the basic question is, as it still would have been if she had received the money on the day she demanded it, (although it might have had to be answered in a different form of action) — *whose money was it originally, and by what right and in what capacity, as between her and her husband, did she withdraw and receive it.*" (Emphasis added.) 211 Md. at 383.

In the course of Judge Hammond's scholarly opinion it is disclosed that reliance was placed by the husband's administratrix on cases from other jurisdictions following

what the court referred to as "the New York rule," defined as follows:

"New York courts hold that where one joint tenant withdraws all of the money in a joint bank account and redeposits it in his or her own name, or otherwise appropriates it, co-tenancy is not thereby terminated and the interest of each depositor remains as it was in actuality within the terms and limits of the joint tenancy when the funds stood to their joint account." 211 Md. at 375.

The opinion also points out that a somewhat different view was taken in New Jersey and Massachusetts:

"There are New Jersey and Massachusetts cases that take the view that withdrawal of the funds by one joint tenant severs the tenancy and makes the owners tenants in common, so that one-half of the account is held by the withdrawer as agent or trustee of the other party." 211 Md. at 375-76.

In *Jones*, the effect of these decisions was felt not to require consideration for the reason that "this Court has decided many cases that have established the Maryland law in the matter of joint accounts." 211 Md. at 276. After a discussion of numerous Maryland cases, the Maryland law was thus encapsulated:

"The distillation of the Maryland cases is that in a contest between those claiming as co-owners or as surviving owner of a bank or building association account, *the Court has sought to find who was the original owner of the money on deposit, the intention of the owner as to the fund, the mechanics employed to effectuate that intent, and their effectiveness. If the mechanics are adequate to effectuate the intent, the Court will gratify the intent, whether or not the trust form has been used.*" 211 Md. at 380. (Emphasis added.)

The court then observed that in the record before it there was "neither agreement nor any evidence as to who owned

the money originally." 211 Md. at 380. Surveying the possible factual alternatives, Judge Hammond observed:

1) If the money was the wife's and she retained the passbook, the husband would not be entitled to take it as survivor, citing *Gorman v. Gorman*, 87 Md. 338 (1898); *Whalen v. Milholland*, 89 Md. 199 (1899).

2) If the money was the husband's and after the deposit he had made an unequivocal delivery of the passbook to the wife with a donative intent, and she had accepted, her estate would be entitled to the account under *Milholland, supra.*

3) If the money was originally all the husband's or belonged in part to each, "Mrs. Elam's possession of the account book and her right to withdraw, could have been as agent, or trustee, for purposes mutually agreed on before the deposit, or to be agreed on from time to time." 211 Md. at 381.

In the instant appeal, the wife candidly admitted in the testimony quoted above that (a) the account was joint, (b) her husband was entitled to a one-half share, (c) that it represented their mutual savings and (d) had been used for family purposes as, for example, to pay for their son Harry's college tuition and books. Indeed, the chancellor found sufficient evidence to hold that the intention of the parties was to use the account for their mutual benefit, and concluded that all of the expenditures made by Mrs. Sody, after the new account was established, were proper expenditures, beneficial to Mr. and Mrs. Sody and their children.

In further holding, however, that upon dissolution of the marriage she was entitled to the balance, we think that under the guidelines of *Jones, supra*, the court was clearly erroneous. We think it obvious that the parties mutually intended the funds to be used for family purposes, and that once the marriage was dissolved, they became tenants in

common of the joint account and the husband was entitled to a one-half interest in the balance of the account.

With respect to the withdrawals made by the wife, it is plain that the sums were not disbursed by the express consent or acquiescence of the husband. As the Court of Appeals of Missouri stated, however, under similar circumstances in *Ray v. Ray*, 336 S.W.2d 731, 738 (1960):

> "Nevertheless, so much thereof as went to accomplishment of the common purpose of the parties should be considered as taken by a running or implied acquiescence. ... *[W]here the withdrawals are expressly or impliedly authorized or when they are applied to the mutual benefit of the parties or to the accomplishment of the common purpose. . . we think there is usually a 'built-in' acquiescence.*" (Emphasis added.)

On the other hand, we do not perceive that the wife's expenditures in the sum of $1165.04 for legal fees and $700.00 for the fees of a private investigator could be properly categorized as expenditures for mutual benefit. Again, to quote the language of the court in *Ray, supra*:

> "Plaintiff says he used part of the money to pay his lawyer. If the attorney was employed in connection with suing the defendant, or in reference to taking over the joint property — in other words, for a purpose antagonistic to the defendant — we think it can hardly be said to have been an expenditure for mutual benefit which would carry the implied consent or acquiescence. The same thing would be true of moneys spent for detectives to shadow the wife." 336 S.W.2d at 738-39.

Accordingly, we find that an appropriate credit should be allowed to appellant husband in the allocation to him of his distributive share in the balance of the joint account. In this connection, we observe also that if the account has at this juncture been further reduced, the court on remand should consider the allowance of such additional credits as may be

appropriate. *See Bauman v. Bauman,* 239 Md. 379, 211 A. 2d 759 (1965).

Finally, we consider that appellant's heavy reliance on the case of *Kornmann v. Safe Deposit and Trust Co.,* 180 Md. 270, 23 A. 2d 692 (1941), is unavailing. In *Kornmann,* the sum of $31,818.14 was on deposit in a savings account to the credit of a husband, in trust, for himself and his wife as "joint owners"; the account being subject to withdrawal by either and the balance at death to go to the survivor. The wife became seriously ill. The husband withdrew the deposit and placed the entire sum in his own name in the same bank, but he also executed a will by which the residue of his estate was left in trust for his wife for her life, disposition of the remainder being made to the husband's near relatives. When the bank filed a bill of interpleader, the administratrix of the wife's estate filed a cross bill to enjoin the bank from paying over to the husband's personal representative (he also having died in the interim)[6] the sum of money involved. The Court of Appeals affirmed an order sustaining a demurrer to an amended cross bill which alleged that the husband had "fraudulently" deprived the wife of all benefit and enjoyment to the account and had destroyed her right of survivorship. The Court in *Kornmann* applied none of the tests spelled out in the later case of *Jones v. Hamilton, supra.* Indeed, we note that *Kornmann* is not cited in *Jones,* and while there is language in *Kornmann* to the effect that it is immaterial whose money it was when it was deposited or how much either contributed to the account, this statement was made in the context of a claim based upon fraud and should not be interpreted as at variance with the principles enunciated in *Jones,* which we hold to be the controlling authority. *See also Haller v. White,* 228 Md. 505, 180 A. 2d 689 (1962).

## II

Did the chancellor err in his award of alimony to the wife in the amount of $5.00 per week under the circumstances of this case?

---

**6.** The opinion discloses that Mr. Snyder died September 5, 1939 and Mrs. Snyder March 6, 1940.

The chancellor stated as to an award of alimony for the wife:

"[T]he evidence at the present time indicates that Mr. Sody's sole income is from the balance due from the sale of Magnet Enterprises. His unemployment compensation payments having been terminated. I think a nominal amount should be ordered, and alimony . . . [is] always subject to the order of Court. I am going to order payment of $5.00 per week alimony, which sounds ridiculous, but Mrs. Sody will have to realize that he's not working at the present time. . . ."

Maryland Code (1957, 1974 Repl. Vol.), Art. 16, § 5 directs that the court not award alimony "unless it shall appear from the evidence that the wife's income is insufficient to care for her needs." In awarding alimony, the court should consider the husband's wealth and earning capacity, the station in life of the parties, the assets and income of the wife, their ages, physical conditions, and ability to work, the length of time the parties lived together, the circumstances leading to the divorce and the fault which destroyed the marital relationship. *Colburn v. Colburn*, 15 Md. App. 503, 514-15, 292 A. 2d 121 (1972); *Quinn v. Quinn*, 11 Md. App. 638, 643, 276 A. 2d 425 (1971). As noted in *Colburn*, the controlling factors are the husband's overall financial ability to support, and the wife's need for support. 15 Md. App. at 515.

The Court of Appeals in *Marshall v. Marshall*, 162 Md. 116, 122, 159 A. 260 (1932) declared that, "where the decree grants an absolute divorce, with no reservation of power with respect to the allowance of alimony thereafter . . . the man is relieved of the obligation of a husband to support his wife." Where either the wife's financial need is not demonstrated, but may reasonably be anticipated, or where the husband's ability to pay an award is not present, the power of the chancellor to determine the wife's legal eligibility for alimony at the time of granting the divorce decree, while reserving the monetary award until a later time, is well

established in Maryland. The purpose of such a reservation is, of course, to permit an award of alimony at a later date. *Rhoad v. Rhoad*, 273 Md. 459, 465, 330 A. 2d 192 (1975); *Buehler v. Buehler*, 229 Md. 317, 320-21, 182 A. 2d 877 (1962); *McSherry v. McSherry*, 113 Md. 395, 77 A. 653 (1910).

Upon our examination of the record, it is plain that the court (a) considered that the wife was entitled to alimony but that (b) the husband's straitened financial circumstances rendered him presently unable to pay. The proper course in such circumstances is not to make an award of alimony in a nominal sum but to reserve alimony. We find that the chancellor's failure to do so in this case was erroneous.

## III

Did the trial court err in the allowance of counsel fees and investigative costs to be charged against the husband?

In his order, the chancellor awarded to the wife's counsel $2,500 as "additional" fees and ordered that appellant pay one-half. In addition, appellant was required to reimburse appellee in the amount of $350 or one-half of the charges for a private investigator incurred by the wife in the preparation of her case.

The criteria for determining the amount of counsel fees to be awarded in cases where "the wife's income is insufficient to care for her needs," Md. Code, Art. 16, § 5, is set forth in *Waters v. Waters*, 191 Md. 436, 441, 62 A. 2d 250 (1948). In determining the amount, the ordinary factors of labor, skill, time, and benefit, as well as the financial resources of the parties, must be taken into account, so as to insure adequate representation of the wife's case. *Woodall v. Woodall, supra,* 16 Md. App. at 29; *Richardson v. Richardson*, 17 Md. App. 665, 678, 304 A. 2d 1 (1973); *Quinn v. Quinn, supra,* 11 Md. App. at 652. An award of reasonable attorney fees is within the sound discretion of the lower court, and is not to be disturbed unless its discretion was exercised arbitrarily or its judgment was clearly wrong. *Eberly v. Eberly*, 12 Md. App. 117, 128-29, 278 A. 2d 107 (1971); *Danziger v. Danziger*, 208 Md. 469, 475, 118 A. 2d 653 (1955).

Here the record shows that the chancellor took all of the relevant factors, including the husband's financial resources, into account. Appellee's counsel represented that he had expended 125 hours and that his customary charge was $50 an hour. An award of $2500, of which the husband was to pay one-half, does not amount to an abuse of discretion.

The propriety of an award of investigator fees as "suit money" was affirmed by the Court of Appeals in *Rubin v. Rubin*, 233 Md. 118, 125-26, 195 A. 2d 696 (1963). Where such expenses are reasonably necessary to the institution or prosecution of a divorce suit, an award of private investigator fees chargeable against the husband to the same extent as counsel fees under Md. Code, Art. 16, § 5 is proper. *Woodall v. Woodall, supra,* 16 Md. App. 30. We find no abuse of discretion in the chancellor's order requiring the husband to pay $350 of the $700 charge incurred by the wife to prove the husband's fault.

IV

Did the chancellor properly order the appellant to reimburse appellee for the costs incurred by her in renting an automobile?

The chancellor ordered that the parties divide the ownership of the two jointly titled automobiles so that the wife would become sole owner of the 1973 Mercury Cougar, and the husband would receive exclusive title to the 1974 model. In addition, the husband was required to reimburse the wife for her expenditure in the amount of $836.48 for the period she rented an automobile, the chancellor having found that a vehicle was necessary in her work, and that the husband's action in taking the car was unjustified. When asked by the court, "Mr. Sody, why did you take the car?", he replied:

"This has been a hard thing for me, Judge, living in our house, being sued for divorce and so on and so forth. I was told by my attorney under no circumstances to remove anything from the house and to support my family in the manner in which

they would be accustomed. I lived up to all of those things he told me to do, however, my ex-wife physically broke into the house on five different occasions, removed many valuable pieces of furniture and furnishings. She took, absconded [sic] or took, I should say, or withdrew our life savings from the bank. She took all of our stocks, and I had the only tangible thing left in my name was the car that she was driving. And I saw no other recourse but to take the car as protection. I might also say that the car has not been used, and from the time it was taken it has been parked, although it gets regular maintenance, it is started daily and is being washed once a week."

The appellant challenges the power of the court, in a divorce proceeding, to award the appellee reimbursement for the amount of the car rental. He argues that this Court's decision in *Rand v. Rand*, 13 Md. App. 574, 284 A. 2d 271 (1974), is dispositive of the issue. There, the chancellor granted the husband a divorce *a vinculo* on grounds of five years' continuous uninterrupted separation. In addition to awarding the wife $75 per week alimony, he also required the husband to reimburse the wife in the amount of $650 for money she had expended in payment of an orthodontic bill incurred by their minor child prior to the divorce action.

In reversing the chancellor's award as to the orthodontic bill, Chief Judge Gilbert wrote for this Court: "An equity court has no jurisdiction to compel a father to pay unusual medical expenses in retrospect . . . or after a decree of divorce has been entered." 13 Md. App. at 582, *citing Fainberg v. Rosen*, 12 Md. App. 359, 365, 278 A. 2d 630 (1971); *Hull v. Hull*, 201 Md. 225, 93 A. 2d 536 (1953); *Gregg v. Gregg*, 199 Md. 662, 87 A. 2d 581 (1952); *Kriedo v. Kriedo*, 159 Md. 229, 150 A. 720 (1930). The wife's remedy was to seek reimbursement in an action at law. *See also Kapneck v. Kapneck*, 31 Md. App. 410, 415, 356 A. 2d 572 (1976); *Murray v. Murray*, 134 Md. 653, 657, 107 A. 550 (1919).

In the instant case, the parties were divorced by Judge

Haile's decree on August 1, 1975. The husband took the car from the wife's premises on August 12, 1975 and it was not returned to her until the court (Brannan, J.) ordered him to do so on October 24, 1975. Upon the dissolution of the marriage, the parties held the 1973 Mercury Cougar as tenants in common. As such, each party was entitled to possession, but the husband's action was not an assertion of his right, but rather a tortious interference or trespass upon the possessory rights of the wife, actionable at law but not cognizable in a divorce proceeding. *Rand v. Rand, supra. See also Brown v. Brown,* 248 Md. 139, 235 A. 2d 706 (1967). The chancellor erred in this proceeding in holding that the former husband was responsible for the car rental.

We note that counsel for appellee has filed separately a petition for an award of counsel fees on appeal in such amount as the court may deem appropriate. In light of the financial circumstances of the respective parties, as noted above, appellee's petition is denied. This is, however, without prejudice to the right of appellee, upon remand, to petition the trial court for such an allowance in the event that changed circumstances, since the filing of this appeal, should justify it.

> *Judgment reversed in part and affirmed in part; cause remanded for further proceedings not inconsistent with this opinion; costs to be equally divided.*